593 S.E.2d 624

**Estalita MARTIN, on behalf of herself and all other similarly situated individuals, Appellant,**

v.

**COMPANION HEALTHCARE CORP., and Healthcare Recoveries, Inc., a Delaware Corporation, Respondents.**

**No. 3750.**

Court of Appeals of South Carolina.

Submitted Jan. 12, 2004.

Decided March 1, 2004.

Rehearing Denied April 22, 2004.

George H. McMaster, for Appellant.

Carolyn Courville, of Houston, James Theodore Gentry, W. Howard Boyd, Jr., Jennifer E. Johnson, and Ronald K. Wray, II, all of Greenville, for Respondents.

HEARN, C.J.:

Estalita Martin sued both her health maintenance organization, Companion HealthCare, and Healthcare Recoveries, Inc., alleging, among other things, that the amount they collected from her in an exercise of Companion's subrogation right exceeded the cost of her medical bills. The trial court granted the defendants' motions for summary judgment, finding Martin's action was barred by the statute of limitations and the doctrine of voluntary payment. We affirm.

## FACTS

Companion is a licensed health maintenance organization that arranges for the provision of health care to its members by entering into contracts with health care providers located throughout South Carolina. Pursuant to these arrangements, Companion compensates physicians, hospitals, clinics, and other entities for health care provided to Companion's members.

Appellant, Estalita Martin, was a member of Companion when, on January 13, 1993, she was injured while riding a motorcycle. Martin brought suit against the other party to the accident. The contract between Companion and Martin gave Companion a subrogation right for amounts it paid to health care providers on Martin's behalf for which she obtained compensation from the at-fault driver in the motorcycle wreck litigation. By letter dated June 4, 1993, Martin's attorney assured Companion that he would "protect [Companion's] right of subrogation upon the settlement of the above matter and upon notification from [his] client that these terms are acceptable."

Through 1995, Companion paid total claims related to Martin's accident in the amount of $13,721.45. After Martin

settled her lawsuit against the at-fault driver, Companion instructed Healthcare Recoveries to pursue a subrogation claim against Martin in the amount of $13,415.45.[1]

Acting on behalf of Companion, Healthcare Recoveries executed a release of Companion's subrogation right, dated August 4, 1995. In consideration for this release, Martin paid $13,415.45 to Healthcare Recoveries on August 8, 1995.

Martin initiated this lawsuit against Companion and Healthcare Recoveries more than four years later, in December 1999. Although the complaint asserts twelve different causes of action, the gravamen of Martin's claims is that Companion could not legally assert its contractual right to subrogation,[2] or in the alternative, that Companion was not entitled to the amount it recovered in subrogation.

Throughout the discovery process, Martin demanded access to Companion's "provider contracts," which Martin asserts would determine how much Companion paid providers for Martin's medical expenses. Companion failed to respond to the request.

Companion and Healthcare Recoveries filed motions to dismiss, which the trial court partially converted to motions for summary judgment. The court granted the motions, and Martin appeals.

## ISSUES

1. Did the trial court err in converting the defendants' motions to dismiss into motions for summary judgment?

---

1. Healthcare Recoveries is in the business of pursuing subrogation claims on behalf of health plans and other health care payers. Healthcare Recoveries does not provide health care services or insurance, or make payments to health care providers. Instead, Healthcare Recoveries merely relieves health plans like Companion of the administrative burden of pursuing and recovering subrogation payments due to them. At all times relevant to this action, Healthcare Recoveries was under contract to handle Companion's subrogation claims in South Carolina. In return for a fee, Healthcare Recoveries acted on Companion's behalf to recover its subrogation amount from Martin.

2. The court found that health maintenance organizations are entitled to subrogate under South Carolina law, and Martin does not appeal from this ruling.

2. Did the trial court err in granting summary judgment when Companion's provider contracts were not produced during discovery?

3. Are Martin's claims barred by the Statute of Limitations?

4. Are Martin's claims barred by the "voluntary payment" doctrine?

## LAW/ANALYSIS

### I. Propriety of the Motions for Summary Judgment

■ Martin first argues the trial court erred when it converted the defendants' motions to dismiss into motions for summary judgment. We disagree.

In support of their motions to dismiss based on the statute of limitations and the voluntary payment doctrine, Companion and Healthcare Recoveries submitted affidavits from Rebecca Haberman, the claims examiner who received the check from Martin in exchange for the release of subrogation rights, and David Pankau, the senior vice-president of Companion who detailed the amounts Companion paid on Martin's behalf. Martin filed a memorandum in opposition to the defendants' motions and provided affidavits from Timothy Schmidt, an auditor for health benefits plans, and from Martin herself.

When a court is considering a motion to dismiss and matters outside the pleadings are presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), SCRCP. *See also Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69, 73 (1999) (stating that conversion of a motion to dismiss into a motion for summary judgment is proper when the parties are afforded a reasonable opportunity to respond to such matters).

With respect to Companion's and Healthcare Recoveries' motions to dismiss based upon the statute of limitations and voluntary payment defenses, the trial court considered matters submitted by the parties outside the pleadings. Importantly, Martin had notice that matters outside the pleadings

would be considered because she was served with the affidavits two months prior to the motion hearing and was afforded the opportunity to respond. Indeed, Martin took advantage of this opportunity by submitting affidavits of her own to the trial court along with her memorandum opposing the defendants' motions. Thus, we find no error in the trial court's conversion of the defendants' motions to dismiss into motions for summary judgment.

## II. Summary Judgment

Martin next argues the trial court should not have granted summary judgment to Companion and Healthcare Recoveries without first permitting her to conduct discovery relating to alleged contracts in which the medical providers who treated Martin may have given Companion year-end rebates. We disagree.

"Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cunningham ex. rel. Grice v. Helping Hands, Inc.*, 352 S.C. 485, 491, 575 S.E.2d 549, 552 (2003). When considering a motion for summary judgment, the court views the evidence and all inferences that can be reasonably drawn therefrom in the light most favorable to the nonmoving party. *Id.*

In this case, the trial court found Companion and Healthcare Recoveries were entitled to summary judgment because Martin's claims were barred by the three-year statute of limitations for causes of action for breach of contract and fraud. S.C.Code Ann. § 15-3-530(1) & (7) (Supp.2003). Because we agree with this ruling, we find that Martin's inability to discover the provider contracts is irrelevant.

According to the discovery rule, the three-year statute of limitations found in section 15-3-350 begins to run when the underlying cause of action reasonably ought to have been discovered. *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996). Thus, the three-year clock starts ticking on the "date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Bayle v. S.C. Dep't. of Transp.*, 344 S.C. 115, 123, 542 S.E.2d 736, 740

(Ct.App.2001). This determination is objective, rather than subjective. *Id.* As such, the question is not whether the particular plaintiff in this case actually knew she had a claim. Instead, we approach this inquiry by deciding "whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist." *Young v. S.C. Dep't of Corr.*, 333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct.App.1999).

Here, Martin, through her attorney, received a release of Companion's right to subrogation by paying $13,415.45 to Healthcare Recoveries in August of 1995. At this date, Martin unquestionably knew Companion was seeking subrogation and knew the amount of money Companion was seeking. She did not commence the present case, however, until December of 1999, four years after she had reimbursed Companion.

Despite these uncontested facts, Martin asserts the statute of limitations has not run because there is no evidence that she knew or should have known at the time of payment that Companion and Healthcare Recoveries may have been collecting more than the amount Companion actually paid on her behalf. Martin further argues she should be entitled to review provider contracts between Companion and each of the health care providers who treated her to determine whether the amount she paid Healthcare Recoveries exceeded the amount Companion expended on her.

Notably, during the four-year interim between Martin's payment to Healthcare Recoveries and the filing of the instant cause of action, Martin cannot point to any events, other than her original payment of the claim and a meeting she had with attorneys,[3] that caused her to "discover" this claim. In *Dorman v. Campbell*, 331 S.C. 179, 184, 500 S.E.2d 786, 789 (Ct.App.1998), our court explained that the triggering of the statute of limitations is "not when advice of counsel is sought or a full-blown theory of recovery developed," but rather when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that a claim exists.

---

3. Martin is represented in this action by the same law firm that represented her in the 1995 motorcycle accident litigation.

We agree with the trial court's finding that the very latest Martin knew the facts and circumstances surrounding Companion's subrogation lien was in August of 1995, when she paid $13,415.45 in exchange for a release of Companion's subrogation rights. Therefore, the statute of limitations began to run at that time and expired in August of 1998. Because the complaint in this case was not filed until 1999, the trial court did not err in finding Martin's claims were barred by the statute of limitations.[4]

**AFFIRMED.**

HOWARD and KITTREDGE, JJ., concur.

---

4. Because the trial court properly found Martin's action was barred by the statute of limitations, we need not address her other arguments.