708 S.E.2d 787

HOLLY WOODS ASSOCIATION OF RESIDENCE
OWNERS, Respondent,

v.

Joe W. HILLER, Robert E. Hiller, David Hiller, and HHH,
Ltd. of Greenville, and Holly Woods Association of
Residence Owners, Inc., Defendants,

of whom Joe W. Hiller and HHH, Ltd.
of Greenville, are the Appellants.

No. 4790.

Court of Appeals of South Carolina.

Heard March 10, 2010.

Decided Feb. 3, 2011.

Withdrawn, Substituted and Refiled April 21, 2011.

Tucker S. Player, of Columbia, for Appellants.

John T. Crawford, Jr., and Keven Kenison, both of Greenville, for Respondent.

LOCKEMY, J.

The plaintiffs in this action were property owners in the Holly Woods Development in Greenville or members of the Holly Woods Association of Residence Owners (the Association). The Association brought suit against the property developers in 2005. After a trial, the jury awarded the Association $971,000 in actual damages for its negligence claim and $1 for the breach of implied warranty of workmanlike service claim. On appeal from this tort action, Joe W. Hiller, Robert E. Hiller, and David Hiller of HHH, Ltd. of Greenville, and Joe Hiller, individually, (Appellants) argue the trial court erred in: (1) allowing the Association to present a damages estimate from its expert witness; (2) denying Appellants' motions for directed verdict and judgment *non obstante* verdict; (3) submitting verdict forms to the jury without separating the respective defendants; (4) failing to grant a new trial absolute; (5) finding in favor of the Association on its equita-

ble causes of action; (6) failing to grant a mistrial; and (7) allowing the Association to amend its complaint on the day of trial. We affirm.

## FACTS

On May 2, 2005, the Association brought suit against Joe Hiller and HHH, Ltd. of Greenville. The Association alleged six causes of action, including: (1) specific performance to compel defendants to turn over control of the homeowners' association to the resident owners; (2) quiet title as to the common areas in favor of the Association; (3) breach of fiduciary duty with respect to Appellants turning over control of the homeowners' association and the Holly Woods Horizontal Property Regime in good repair or with adequate reserves to make repairs; (4) negligence in the construction of the project and the infrastructure associated thereto; (5) breach of contract; and (6) violation of the South Carolina Unfair Trade Practices Act. On December 7, 2005, the Association amended its complaint and added two defendants, Robert E. Hiller and David Hiller, and added three causes of action: (1) breach of implied warranty of workmanlike service; (2) breach of implied warranty of good title and fair dealing; and (3) veil piercing as to the individual defendants for any damages recovered. Thereafter, defendant HHH, Ltd. of Greenville answered the amended complaint and argued the claims were barred by the statute of limitations, standing, estoppel, waiver, and the statute of repose. The court held two hearings prior to trial. The first hearing was related to discovery issues, and the second hearing involved Appellants' affirmative defenses.

By court order, in July 2006, defendant Joe Hiller continued with his case pro se after his counsel's motion to be relieved was approved. The Association then filed a motion to compel discovery from Appellants, and after a hearing, Judge Cooper ordered Appellants to turn over certain documents to the Association on December 18, 2006. Subsequently, the Association filed a motion for sanctions for Appellants' failure to comply with Judge Cooper's order. Judge Few heard the Association's sanction argument and the Appellants' motion for summary judgment based on standing, the statute of limitations, and the statute of repose on January 7, 2007. After the hearing, Judge Few granted the Association's motion for

sanctions against defendants pursuant to Rule 37(b), SCRCP. Additionally, he denied Appellants' summary judgment motions. Specifically, Judge Few (1) denied Appellants' motion for summary judgment based on the applicable statute of limitations because the Association claimed no damages were incurred more than three years before the commencement of this action; (2) denied Joe Hiller's motion to dismiss for lack of standing and motion to compel; (3) denied Joe Hiller's motion for sanctions; and (4) denied the Association's motion to amend its complaint to add an additional developer.

On January 8, 2007, the Association filed a motion to amend its complaint to correct a scrivener's error and remove the "Inc." from its name. Judge Miller granted the Association's motion to amend the complaint to reflect the Association's correct name. The peculiar effect of Judge Miller's ruling was that the original plaintiff became a named defendant. After trial, the jury returned a $971,000 verdict in favor of the Association for actual damages as to the negligence claim. The jury awarded $1 in actual damages on the breach of contract claim, breach of fiduciary duty claim, and breach of implied warranty of workmanlike service claim, but it did not award punitive damages. All defendants filed notices of appeal, including Joe Hiller in his individual capacity. These appeals were consolidated into this final appeal.

## STANDARD OF REVIEW

In an action at law, on appeal of a case tried by a jury, the jurisdiction of this court extends merely to correction of errors of law. *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 460, 494 S.E.2d 835, 841 (Ct.App.1997). We will not disturb the jury's factual findings unless a review of the record discloses there is no evidence that reasonably supports the jury's findings. *Id.* at 461, 494 S.E.2d at 841.

When a suit involves both legal and equitable issues, each cause of action retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal. *West v. Newberry Elec. Co-op.*, 357 S.C. 537, 542, 593 S.E.2d 500, 502 (Ct.App.2004). "In an action at equity, this court can find facts in accordance with its view of the preponderance of the evidence." *Id.* "[A]n action to quiet title to

property is an action in equity." *Jones v. Leagan,* 384 S.C. 1, 10, 681 S.E.2d 6, 11 (Ct.App.2009). Specific performance is also an equitable action. *Fesmire v. Digh,* 385 S.C. 296, 303–04, 683 S.E.2d 803, 807 (Ct.App.2009).

## LAW/ANALYSIS

Appellants present numerous issues on appeal. We begin our analysis of this case by examining a timeline to determine if the Association was procedurally barred from bringing its lawsuit either under the statute of repose or the statute of limitations.

### I. Statute of Repose

■ Appellants maintain the trial court should have granted a directed verdict because the damages the Association complained of occurred more than thirteen years after construction was completed on the property. We disagree.

The version of the statute of repose in effect at the time the Association initiated its lawsuit required it bring its action within thirteen years of substantial improvement to real property.[1] S.C.Code Ann. 15–3–640 (Supp.2003). Specifically, section 15–3–640 provided:

No actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than thirteen years after substantial completion of the improvement. For purposes of this section, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:

(1) an action to recover damages for breach of a contract to construct or repair an improvement to real property;

(2) an action to recover damages for the negligent construction or repair of an improvement to real property;

(3) an action to recover damages for personal injury, death, or damage to property;

1. However, we note the current version prohibits "actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property" that arise more than eight years after substantial completion of the improvement. S.C.Code Ann. § 15–3–640 (Supp.2009).

(4) an action to recover damages for economic or monetary loss;

(5) an action in contract or in tort or otherwise;

(6) an action for contribution or indemnification for damages sustained on account of an action described in this subdivision;

(7) an action against a surety or guarantor of a defendant described in this section;

(8) an action brought against any current or prior owner of the real property or improvement, or against any other person having a current or prior interest in the real property or improvement;

(9) an action against owners or manufacturers of components, or against any person furnishing materials, or *against any person who develops real property,* or who performs or furnishes the design, plans, specifications, surveying, planning, supervision, testing, or observation of construction, or construction of an improvement to real property, or a repair to an improvement to real property. This section describes an outside limitation of thirteen years after the substantial completion of the improvement, within which normal statutes of limitations continue to run. (emphasis added)

■■■■ The purpose of the statute of repose is to provide a substantive right to developers to be free from liability after a certain time period. *See Langley v. Pierce,* 313 S.C. 401, 403, 438 S.E.2d 242, 243 (1993) ("A statute of repose constitutes a substantive definition of rights rather than a procedural limitation provided by a statute of limitation."). Further, "[s]tatutes of repose are based upon considerations of the economic best interests of the public as a whole and are substantive grants of immunity based upon a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." *Id.* at 404, 438 S.E.2d at 244.

The development at issue was built in several stages. According to plats and testimony submitted in the record, buildings one through eight were built between 1978 and 1983. The rest of the buildings in the development were built in 1996 or later. Here, the Association's complaints concern the com-

mon areas of Holly Woods. Specifically, the Association based its suit on problems with the road that runs throughout the development, continued erosion which caused infrastructure problems, continued problems with the undeveloped portion of the development, defective sewer line construction, lack of firewall installation in certain units other than those in buildings one through eight, and other problems relating to the common areas of Holly Woods. We find the statute of repose would have barred the Association from suing for construction problems relating to the infrastructure of buildings one through eight. We note the problems that form the basis of the Association's suit included general irrigation and design problems throughout the development, which ultimately led to moisture and foundation problems in building five. However, we hold the statute of repose did not bar the Association from bringing its suit in 2005 because it related to the common areas of the development built in 1996 or later.

## II. Statute of Limitations and Compliance with Judge Few's Order

Appellants maintain the trial court erred in refusing to grant their directed verdict motion based on the statute of limitations. We disagree.

### A. Statute of Limitations

In South Carolina, a party must commence an action within three years of the date the cause of action arises. S.C.Code Ann. § 15-3-530 (2005). The three-year statute of limitations "begins to run when the underlying cause of action reasonably ought to have been discovered." *Martin v. Companion Healthcare Corp.*, 357 S.C. 570, 575, 593 S.E.2d 624, 627 (Ct.App.2004). Under the discovery rule, "the three-year clock starts ticking on the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Id.* at 575-76, 593 S.E.2d at 627 (internal citation omitted). The test for whether the injured party knew or should have known about the cause of action is objective rather than subjective. *Id.* at 576, 593 S.E.2d at 627. Therefore, this court must determine "whether the circumstances of the case would put a person of common knowledge and experience on notice that

some right of his has been invaded, or that some claim against another party might exist." *Young v. S.C. Dep't of Corrs.,* 333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct.App.1999).

 The record contains evidence that the Association did not learn of several problems within the development until 2002. Therefore, the Association was allowed to present evidence of damages from 2002 to 2005. Here, Appellants argue the Association knew of problems prior to 2002. Accordingly, Appellants maintain the Association should have brought its action earlier and was barred from bringing its action under the statute of limitations.

The Association claims it experienced a series of problems within the development. However, the Association maintains the problems existing when it brought suit were different from problems it experienced prior to 2002. Specifically, the minutes from an annual meeting of the Association's board meeting from 1991 reveal the Association knew of certain problems in 1991, including a pool leak, drainage around building five, and termite bonding. However, witnesses testified the damages that formed the basis of the Association's 2005 lawsuit stem from different problems than those that existed in 1991.

Mary Louise Reeves, secretary of the Association's Board, testified the Association was only seeking damages that occurred from 2002 to 2005. Reeves testified problems have always existed within the development and some are the same problems, but some are different problems. Richard H. Roubard, a member of the Association's Board since 1998, testified the damage around building five that existed in 1991 was corrected. Roubard testified Gray Engineering came up with a design for a culvert that went over the existing road and a head wall and drainage to pick up the run off. According to Roubard, the culvert repair resolved the 1991 drainage issues. Additionally, Roubard explained new problems with drainage arose between 1998 and 2000; however, he claimed the Association also addressed and corrected those problems. Roubard testified the Association learned of the most current drainage problems in September 2002 after a rainstorm.

Steven John Geiger, the Association's expert, also testified as to the damages the Association claimed could have been discovered in 2002 or later. Geiger categorized the condition

of Holly Woods into three distinct occurrences contributing to the problems: (1) the general random nature that storm water flows across the site, (2) the presence of poor loose compressible soil, and in some cases soil that contains organic matter underlying the construction; and (3) the open excavation around the eastern and southern perimeters of building five. Geiger testified he knew about the 1991 report, but he testified the 1991 report did not affect the content of his damage report and had nothing to do with his research. Further, he testified that the majority of the damages on Holly Woods could be attributable to conditions since 2002.

We find it is a jury question as to whether the damages the Association claimed in 2005 were different from those it experienced in the past. There is evidence from board members and Geiger that the problems, though similar in nature, were different. Therefore, we find the circuit court did not err in denying Appellants' directed verdict motion based on the statute of limitations.

### B. Compliance with Judge Few's order

Judge Few issued an order prior to the Association's trial responding to Appellants' motion for summary judgment based on the statute of limitations. In his order, Judge Few ordered the Association to limit the presentation of its damages to only those incurred within three years of the commencement of its action. Appellants maintain the Association presented damages incurred as early as 1979, although Judge Few specifically ordered the Association to present damages "incurred" from 2002 to 2005. Appellants argue there is a difference between when the damages were "incurred" and when damages were "manifested." Appellants failed to raise the compliance objection contemporaneously during trial when these alleged violations of Judge Few's order occurred. Therefore, this issue is not preserved for our review. *State v. Hoffman,* 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (holding a broad and non-contemporaneous objection is not enough to properly preserve an error for appellate review).[2]

---

2. Any res judicata argument in relation to Judge Few's order is not preserved. *Hopkins v. Harrell,* 352 S.C. 517, 522 n. 1, 574 S.E.2d 747,

### III. Expert Witness Testimony

Appellants maintain the trial court erred in allowing the Association to present evidence from an expert witness regarding a damages estimate. Specifically, Appellants argue the Association disclosed the damages estimate only one week prior to trial. Therefore, Appellants contend the trial court erred in allowing this testimony as it resulted in unfair surprise and substantial prejudice because Appellants could not prepare for trial. We disagree.

To prevent a trial from becoming a surprise or a guessing game for either party, discovery involves full and fair disclosure. *Samples v. Mitchell*, 329 S.C. 105, 113, 495 S.E.2d 213, 217 (Ct.App.1997). "Essentially, the rights of discovery provided by the rules give the trial lawyer the means to prepare for trial, and when these rights are not accorded, prejudice must be presumed." *Id.* at 113–14, 495 S.E.2d at 217. Therefore, we must determine whether a discovery violation occurred, and if so, whether that violation prejudiced Appellants.

On appeal, Appellants maintain the Association violated Rule 33, SCRCP, concerning the use of interrogatories. Pursuant to Rule 33, a party is required to promptly update the information in the interrogatories as it becomes available. *See* Rule 33(b), SCRCP ("The interrogatories shall be deemed to continue from the time of service, until the time of trial of the action so that information sought, which comes to the knowledge of a party, or his representative or attorney, after original answers to interrogatories have been submitted, shall be promptly transmitted to the other party.").

First, we find no discovery violation occurred because the Association supplemented its responses to interrogatories throughout trial. We note the damages amount changed significantly throughout discovery. The first damage estimate from June 2006 totaled $653,227. Thereafter, in December 2006, the damages estimate changed to $233,681. The second damage estimate specifically stated: "Total does not include estimate for infrastructure damages currently being assessed

750 n. 1 (Ct.App.2002) (holding an issue must be raised to and ruled upon by the trial court in order to be preserved for review).

by expert witness." Further, the Association provided Geiger's assessment report to Appellants when Geiger finalized it. Moreover, even if there was a discovery violation, we find no prejudice because Appellants failed to depose Geiger. We note Geiger only developed a final damage estimate approximately ten days before he testified because he did not finish his field investigation work until then. However, had Appellants deposed Geiger, he could have given an approximate damages estimate. Therefore, we find the trial court did not abuse its discretion in admitting Geiger's damages estimate.

### IV. Directed Verdict and JNOV Motion on Gross Negligence

Appellants argue the trial court erred in submitting the issue of gross negligence to the jury. The jury only awarded actual damages. Assuming without deciding that the trial court erred, Appellants failed to demonstrate any resulting prejudice from the alleged error. *See Hall v. Palmetto Enters. II, Inc.*, 282 S.C. 87, 94, 317 S.E.2d 140, 145 (Ct.App. 1984) ("In the absence of prejudice, an erroneous instruction does not justify a reversal and warrant a new trial."). Accordingly, we find no error in the trial court's decision to submit gross negligence to the jury.

### V. Mistrial

Appellants argue the trial court erred in failing to grant its motion for a mistrial because Geiger's testimony contradicted Judge Few's order denying Appellants' motion for summary judgment based upon the statute of limitations. We disagree.[3]

The grant or refusal of a mistrial lies within the sound discretion of the trial court and the court's ruling will not be disturbed on appeal absent an abuse of discretion. *Vestry & Church Wardens of Church of Holy Cross v. Orkin*

---

3. Several copies of the record on appeal provided by Appellants are missing pages 792 to 797 where Appellants moved for a mistrial. Although Appellants bear the burden of providing a sufficient record for review, because this Court was able to locate a copy submitted by Appellant that included the missing pages we address this issue on the merits.

*Exterminating Co., Inc.*, 384 S.C. 441, 446, 682 S.E.2d 489, 492 (2009). "In order to receive a mistrial, the moving party must show error and resulting prejudice." *Id.* Here, assuming the trial court erred in failing to restrict the evidence Holly Woods could present, Appellants suffered no prejudice because the trial court charged the jury on the law of the statute of limitations. Accordingly, we find the trial court did not abuse its discretion in denying Appellants' motion for a mistrial. *See id.* (finding a mistrial should only be granted when absolutely necessary and "the trial court should exhaust other methods to cure possible prejudice before aborting a trial").

## VI. Directed Verdict Based on Standing

 Appellants maintain the trial court erred in failing to grant their motion for a directed verdict based on the Association's lack of standing. Specifically, Appellants contend the Association lacked standing because it possesses no interest in any property or common area in Holly Woods. We disagree.

 Generally, a successor is "[a] person who succeeds to the office, rights, responsibilities, or place of another." Black's Law Dictionary (9th ed.2009). The word successor can mean one who is entitled to succeed, or it can mean one who has in fact succeeded. *Battery Homeowners Ass'n v. Lincoln Fin. Res., Inc.*, 309 S.C. 247, 250, 422 S.E.2d 93, 95 (1992). Here, "Holly Woods Association of Residence Owners, Inc." was dissolved in 1987 by the South Carolina Secretary of State for failing to file tax returns. Between 1991 and 2000, the individual residence owners filed tax returns for the Holly Woods Association of Residence Owners, Inc. In 2000, the individual residence owners formed "Holly Woods Association of Residence Owners" and filed an Amended and Restated Master Deed establishing the Holly Woods Association of Residence Owners as the nonprofit corporation responsible for the management and operation of Holly Woods. We find evidence supports the trial court's determination that Holly Woods Association of Residence Owners was the successor to Holly Woods Association of Residence Owners, Inc., and therefore, had standing. Accordingly, the trial court properly denied Appellants' motion for a directed verdict on this ground.

## VII. Directed Verdict on Negligence

 Appellants contend the trial court erred in failing to grant a directed verdict on negligence. Specifically, they maintain the existence and scope of a duty are legal questions, and no evidence was presented pertaining to duties owed by Appellants to the Association.

We find this issue is not preserved for our review. Although Appellants moved for a directed verdict at the close of all testimony, they did not move for a directed verdict on the specific basis that no evidence indicated they owed a duty to the Association. *Creech v. S.C. Wildlife & Marine Res. Dep't*, 328 S.C. 24, 34, 491 S.E.2d 571, 576 (1997) (holding the appellant's failure to raise a particular issue in its directed verdict motion precludes appellate review of that issue); *see also* Rule 50(a), SCRCP ("A motion for a directed verdict shall state the specific grounds therefor."). Therefore, we decline to address this issue on the merits.

## VIII. Directed Verdict Based on Construction Post–1981

 Appellants contend the trial court erred in failing to grant a directed verdict because the Association presented no evidence that any named defendant performed any construction at Holly Woods after 1981. We disagree.

Though evidence does not demonstrate Appellants specifically performed the construction at Holly Woods after 1981, the Association had a cause of action against Appellants as developers. Furthermore, the Association is permitted to sue any party as long as the party is properly served and the Association has standing. *See Sloan v. Sch. Dist. of Greenville Cnty.*, 342 S.C. 515, 518, 537 S.E.2d 299, 301 (Ct.App. 2000) ("A fundamental prerequisite to institute an action is the requirement that the plaintiff have standing."). Accordingly, we find the trial court properly declined to direct a verdict for Appellants on this basis.

## IX. Directed Verdict on Equitable Causes of Action

 Appellants argue the trial court erred in failing to direct a verdict on the Association's equitable causes of action for specific performance and quiet title because the Associa-

tion knew problems existed prior to May 2002. We decline to address this argument on the merits. In their brief, Appellants fail to cite any case law or authority in support of their argument. An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (finding appellant abandoned issue when he failed to provide argument or supporting authority); *Shealy v. Doe*, 370 S.C. 194, 205–06, 634 S.E.2d 45, 51 (Ct.App.2006) (declining to address an issue on appeal when appellant failed to cite any supporting authority and made conclusory arguments). Therefore, Appellants are deemed to have abandoned this issue.

### X. Directed Verdict or New Trial Based on Causation or Time of Occurrence

■ Appellants argue the trial court erred in failing to grant their directed verdict motion because only speculative evidence was presented during the trial to support a finding of damages for the time period allowed. We disagree.

In *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981), our supreme court stated:

> Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy. While neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the amount of loss or damage is not required.

After several investigations, Geiger, a qualified expert, testified regarding the amount of damages. We find Geiger's damage assessment was enough evidence for the jury to determine an appropriate damages award with reasonable certainty. Therefore, we find the trial court properly denied Appellants' motion for a direct verdict.

### XI. Improper Verdict Form

■ Appellants maintain the trial court erred in failing to submit a special verdict form to the jury. We disagree.

HHH, Ltd. and Joe Hiller requested they be separated on the verdict form for the jury. Specifically, they asked for the verdict form to be "divided between HHH and Joe Hiller [because] [t]here was a distinct time period when HHH did not exist." Additionally, there was a discussion as to whether joint and several liability was proper in this case because of the timeline. The trial court decided to submit the verdict form to the jury and stated it could submit a special interrogatory if the jury came back with a plaintiff's verdict. Once in deliberations, the jury submitted several questions to the court. Thereafter, the jury returned a plaintiff's verdict. After the verdict was published, the trial court asked both parties if they had anything more for the jury, and both sides responded they did not.

Here, the trial court gave the parties an opportunity to request a special interrogatory after the jury returned a plaintiff's verdict, but Appellants failed to do so. We find that Appellants had an obligation to request a special interrogatory once the jury returned its verdict. Appellants waived appellate review of this issue because they failed to request a special interrogatory when the deciding jury was available and in place to review such a matter. *See Ex parte McMillan,* 319 S.C. 331, 335, 461 S.E.2d 43, 45 (1995) (finding a party cannot acquiesce to an issue at trial and then complain on appeal). Accordingly, we decline to address this issue.

### XII. New Trial Based on Jury Prejudice

██ Appellants argue the trial court erred in failing to grant their motion for a new trial because the $971,000 verdict on the negligence claim was grossly excessive and a result of passion, caprice, prejudice, or some other influence outside the evidence. We disagree.

██ The decision of whether to grant a new trial based on a jury's passion, caprice, prejudice, or some outside influence is highly discretionary. *Mims v. Florence Cnty. Ambulance Serv. Comm'n,* 296 S.C. 4, 7–8, 370 S.E.2d 96, 99 (Ct.App.1988) ("The granting of a new trial on the ground that the verdict is so excessive as to indicate caprice, passion, or prejudice on the part of the jury is committed to the sound discretion of the trial judge and his decision thereon will not be disturbed on

appeal, absent a showing of an abuse of discretion."). We find no evidence of caprice, passion, or prejudice on part of the jury. Furthermore, the amount awarded in actual damages was lower than the $1.4 million damage estimate of the expert witness. Therefore, evidence exists to sustain the jury's verdict. *See Wright v. Craft*, 372 S.C. 1, 36, 640 S.E.2d 486, 505 (Ct.App.2006) (finding a jury's verdict will not be overturned if any evidence exists to sustain the factual findings implicit in its decision). Accordingly, we find the trial court did not err in declining to grant a new trial absolute on this basis.

### XIII. New Trial Based on Inconsistent Jury Verdict

■ Appellants maintain the trial court erred in failing to grant their motion for a new trial because the jury's verdict was inconsistent on its face. Specifically, Appellants argue breach of warranty of implied workmanlike service is encompassed within negligence; therefore, the jury's verdict was facially inconsistent. We disagree.

■ "It is the duty of the court to sustain a verdict when a logical reason for reconciling the verdict can be found." *Orangeburg Sausage Co. v. Cincinnati Ins. Co.*, 316 S.C. 331, 334, 450 S.E.2d 66, 74 (Ct.App.1994); *see also Camden v. Hilton*, 360 S.C. 164, 174, 600 S.E.2d 88, 93 (Ct.App.2004) ("In South Carolina, an appellate court must uphold a jury verdict if it is possible to reconcile its various features."). The causes of action for negligence and breach of implied warranty of workmanlike service are separate and distinct and are not mutually exclusive. Furthermore, the jury awarded $971,000 in actual damages for the Association's negligence claim and only awarded $1 in actual damages for the Association's claims for breach of implied warranty of workmanlike service. Although the jury returned plaintiff verdicts on these causes of action, the respective damage awards were vastly different. However, this discrepancy does not indicate the verdicts are irreconcilable. *See Orangeburg Sausage Co.*, 316 S.C. at 345, 450 S.E.2d at 74 ("Although the jury awarded different amounts under each theory, this does not mean the verdicts are inconsistent. Different damages are recoverable under each claim, and the trial court instructed the jury as to the appropriate measure of damages under each claim."). There-

fore, we find the trial court did not err in declining to grant a new trial based on inconsistent verdicts.

### XIV. Equitable Causes of Action

Appellants argue the trial court erred in finding in favor of the Association on its causes of action for specific performance and quiet title. Essentially, Appellants reiterate their standing argument. Our prior determination that the Association had standing is dispositive of this issue. Accordingly, we decline to consider this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

### XV. Conversion of Plaintiff to Defendant on Day of Trial

Appellants maintain the trial court erred by allowing the Association to be converted to a defendant on the day of trial and entering a new plaintiff. We disagree.

Here, "Inc." was removed from the plaintiff's name, and the trial court found Appellants had actual notice of who the plaintiff was in this case. We agree with the trial court. Changing the name of the plaintiff in this tort action did not affect whether Appellants received proper notice. There is no evidence in the record that either party failed to comply with proper service of process.

As to the issue of adding a new defendant to the action, we note that Holly Woods Association of Resident Owners, Inc. is defunct. Further, Holly Woods Association of Resident Owners Inc. did not file a notice of appeal with our court. Therefore, this issue is moot because we cannot exercise jurisdiction over them. Accordingly, we affirm the decision of the trial court.

### CONCLUSION

For the above stated reasons, the decisions of the trial court are

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.