LOCKEMY, C.J.
**270 In this construction defect case, Bostic Brothers Construction, Inc. (Bostic) appeals several of the trial court's orders. Bostic argues the trial court erred by (1) denying its motion for a directed verdict based on the statute of limitations, (2) improperly setting off portions of the jury's verdict, and (3) denying its motion for a new trial. We affirm in part and reverse in part.
The salient facts at issue in this complex construction litigation are discussed at length in this court's opinion in Stoneledge at Lake Keowee Owners' Assoc. v. IMK Dev. Co. , Op. No. 5600, 425 S.C. 276, 821 S.E.2d 509, 2018 WL 4905983 (S.C. Ct. App. filed Oct. 10, 2018) (Shearouse Adv. Sh. No. 40 at 11-31). This case involves the first developer of the property, Bostic, which the jury found to be partially responsible for the damages Stoneledge suffered. Our opinion in Stoneledge I adequately addresses the second and third issues Bostic raises in this appeal. Accordingly, pursuant to Rule 220(c), SCACR, we reverse the trial court's set-off order and remand *506 for entry of judgment consistent with our decision in Stoneledge I . Furthermore, we affirm the trial court's order declining to grant Bostic's motion for a new trial.
The only issue raised by Bostic that was not addressed in Stoneledge I is Bostic's motion for directed verdict based on the statute of limitations.
**271 "When reviewing a motion for directed verdict, this court must consider all evidence in the light most favorable to the nonmoving party, and may only reverse a jury's verdict if the factual findings implicit within it are contrary to the only reasonable inference from the evidence." Maher v. Tietex Corp. , 331 S.C. 371, 376, 500 S.E.2d 204, 207 (Ct. App. 1998).
Generally, a cause of action for negligence or breach of implied warranties must be brought within three years or risk dismissal based upon the statute of limitations. See S.C. Code Ann. § 15-3-530 (2005). "The three-year statute of limitations 'begins to run when the underlying cause of action reasonably ought to have been discovered.' " Holly Woods Ass'n of Residence Owners v. Hiller , 392 S.C. 172, 183, 708 S.E.2d 787, 793 (Ct. App. 2011) (quoting Martin v. CompanionHealthcare Corp. , 357 S.C. 570, 575, 593 S.E.2d 624, 627 (Ct. App. 2004) ). "Under the discovery rule, 'the three-year clock starts ticking on the date the injured party knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct.' " Id . (quoting Martin , 357 S.C. at 575-76, 593 S.E.2d at 627 ). "The test for whether the injured party knew or should have known about the cause of action is objective rather than subjective." Id ."Therefore, this court must determine 'whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party may exist.' " Id . (quoting Young v. S.C. Dep't of Corr. , 333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct. App. 1999) ).
Bostic argues it was entitled to a directed verdict because the homeowners knew or should have known of issues pertaining to its actions as builder of the Stoneledge properties years before it was sued in February 2010. Bostic relies heavily on property owner Steven Taylor's testimony that he "observed water intrusion in various parts of [his] home, including the outside porch and crawlspace, both before and after Marick/IMK assumed control of the Project and created the HOA." Bostic also noted Taylor told Rick Thoennes, then a member of the HOA, of the defects in 2005. Bostic asserts these admissions indicate it should not be liable for any damages the HOA incurred because it had notice of the **272 defects in 2005, and did not pursue any legal remedies at that time. We disagree.
Bostic argues this case is controlled by this court's decision in Barr v. City of Rock Hill , wherein this court found, "[a] party has constructive notice [of an issue] if the party knows of ' "facts and circumstances of an injury [that] would put a person of common knowledge and experience on notice that some right ... has been invaded or that some claim against another might exist." ' " 330 S.C. 640, 645, 500 S.E.2d 157, 160 (Ct. App. 1998) (quoting Graniteville Co. v. IH Servs., Inc. , 316 S.C. 146, 148, 447 S.E.2d 226, 228 (Ct. App. 1994) ). This court held, "[f]ailure of the injured party to comprehend the full extent of damages ... is immaterial." Id .
The plaintiffs in Barr purchased a home in May 1987 from a development corporation associated with the City of Rock Hill. Id . at 642, 500 S.E.2d at 158. At that time, and each year until May 1990, the Barrs had the house inspected for termites. Id . Those reports indicated excessive moisture under the home and suggested repairs, "including adding vents, back-filling footers, and installing a polyethylene vapor barrier." Id . The Barrs did nothing to repair these items until 1992, when they were denied refinancing based on those issues. Id . at 642, 500 S.E.2d at 159. Thereafter, the Barrs contacted the city to request repairs. Id . at 643, 500 S.E.2d at 159. The Barrs contracted with an engineering firm to obtain a structural inspection, which revealed a number of problems including, "improper installation of floor joists and sills, improper support of floor sills, standing water under the house, no solid footing beneath a number of piers, and unacceptable moisture *507 content in the floor joists." Id . The Barrs filed suit against the city in 1994, and the city raised a statute of limitations defense. Id . The circuit court granted the defendant's motions for summary judgment finding the statute of limitations had expired. Id . at 642, 500 S.E.2d at 158.
This court affirmed. Id . at 646, 500 S.E.2d at 159. The court declined to determine if the statute of limitations began to run after the first termite inspection or as a cumulative effect of the multiple termite inspections, instead finding the applicable statute of limitations would have run under either scenario. Id . at 645, 500 S.E.2d at 159. In so doing, this court noted, **273 "[m]any of the problems listed [in the engineering reports] were also listed in the termite inspection reports." Id . The court stated, "[i]f the Barrs had exercised reasonable diligence and investigated the problems noted in the termite inspection reports, they could have realized the magnitude of the problem and brought suit before the statute of limitations ran." Id . at 646, 500 S.E.2d at 159.
The HOA, on the other hand, asserts this case is more similar to our supreme court's decision in Santee Portland Cement Co. v. Daniel Int'l Corp. , 299 S.C. 269, 384 S.E.2d 693 (1989), overruled on other grounds . In 1965, Santee entered into a contract with Daniel for the construction of a cement plant in Orangeburg. Id . at 270, 384 S.E.2d at 693. As part of the construction, Daniel built a cement storage silo complex. Id . In 1969, Santee discovered a small crack in one of the bins which was repaired by Daniel's sub-contractor. Id . In 1975, another crack formed in that bin and Santee worked with another company to fix the issue. Id . at 270, 384 S.E.2d at 694. That contractor characterized the work as a "permanent repair." Id . In 1980 a different bin ruptured causing extensive damage and killing two. Id . Santee filed suit against Daniel asserting its negligent work caused damages to Santee's plant. Id . Daniel argued the suit was barred by the statute of limitations, and the trial court agreed. Id . The South Carolina Supreme Court reversed. Id . at 274, 384 S.E.2d at 696.
The court found Santee introduced testimony that the defects in the silos were latent because the negligent work was within the concrete walls. Id . The court noted Santee had experienced cracking, but experts testified those issues were common in cement structures. Id . Furthermore, Santee had the silos inspected and fashioned a "permanent repair" for the issues. Id . The court found, "[a]ll of the evidence introduced went to the reasonableness of Santee's actions, which was an issue to be decided by the jury." Id .
Further, the HOA asserts its position is also supported by Judge Wooten's analysis in Centex Homes v. S.C. State Plastering, LLC , Case No 4:08-cv-2496-TLW, 2010 WL 2998519 (D.S.C. July 28, 2010). Centex was the developer, general contractor, and seller of a condominium complex in North Myrtle Beach. Id . at *1. The complex consisted of ten buildings;
**274 the dispute concerned Building 3, completed in June 2001, and Building 1, completed in April 2002. Id . The defendants were subcontractors on the project. Id . In 2002, Centex discovered water damage to Building 3, thought to have been caused by water intrusion at the intersection of decks and the outside walls of the units. Id . Two of the defendants performed repairs to the buildings to address the damage to Building 3. Id . No damage was reported to Building 1 at that time. Id .
In 2006, Centex discovered water damage in Building 3 and in Building 1. Id . at *2. Centex alleged that damage was also caused by water intrusion at the intersection of decks and the outside walls. Id . Centex repaired the damage and brought suit against the subcontractors for damages to both buildings. Id . The subcontractors moved for summary judgment, alleging the claims were barred by the statute of limitations. Id . The subcontractors asserted Centex knew or should have known that a cause of action existed with regard to Building 1 after the damage was reported to Building 3 in 2002. Id . at *3. The defendants' argument was "based on the fact that similar problems developed in Building 3, a nearly identical building constructed next door to Building 1, only months after Building 1 was completed in 2002." Id . Centex admitted it knew Building 1 was missing a flashing that was replaced in Building 3 after it was damaged in 2002, but did not take any corrective measures to add that flashing to Building 1. Id .
The District Court found Centex presented sufficient questions of material fact to overcome *508 summary judgment. Id . at *5. After analyzing Santee , the District Court noted Centex's expert testified there was more than one way to add flashing to a building and the flashing could have been under the stucco, making it a latent defect. Id . Furthermore, the initial expert Centex retained to inspect the buildings did not discover any defects with the flashing as Building 1 was being constructed, just as the expert in Santee felt the work it was doing would be a "permanent repair." Id . While the District Court noted the case was a close question, the court declined to grant the defendants' motions for summary judgment. Id . at *6. **275 Here, there was testimony during trial that some owners knew about issues including roof leaks and water intrusion as early as 2003. According to Taylor, Marick undertook to repair some of the water intrusion issues that plagued the homeowners, and it did not become apparent those repairs were inadequate until drought conditions ended in 2008 and 2009. Specifically, Marick caused a waterproofing substance to be applied to the porches and decks and excavated around at least one unit to discover the cause of a leak in the basement. Additionally, property owner Robert White testified he noticed water intrusion in his crawl-space when he moved in during 2006, and he told Rick Thoennes about those issues. Furthermore, the HOA's engineering expert testified the condition of the windows and doors in the abandoned units would put a general contractor on notice that an investigation of the other units was necessary.
However, other homeowners had no such knowledge. Taylor testified certain significant defects were not discovered until 2009. Some homeowners only discovered issues with their construction when the rains returned in 2008 and 2009. Taylor testified that damage to columns and framing was not discovered until homeowners began having problems with railings on a number of the porches at that time.
Mindful of our standard of review, we find there is some evidence these latent defects could not have been discovered through the exercise of reasonable diligence until 2009 at the earliest. See Maher , 331 S.C. at 376, 500 S.E.2d at 207 ("When reviewing a motion for directed verdict, this court must consider all evidence in the light most favorable to the nonmoving party, and may only reverse a jury's verdict if the factual findings implicit within it are contrary to the only reasonable inference from the evidence."). These defects were hidden by stone veneers and exterior walls, and many could not be seen without destructive testing. Understandably, if there was very little rain, damages that only become apparent due to water intrusion would not be discovered until there was sufficient precipitation to put the homeowners on notice.
The decision to grant a directed verdict is driven by the specific facts presented during trial. The facts in this case created a jury question as to whether it was reasonable for the **276 homeowners to know, or by reasonable diligence discover, there were issues with their construction. There was evidence these specific homeowners, whose homes were damaged because of water intrusion, were unable to appreciate their cause of action against Bostic because the area had very little rain, and their problems only began to appear in 2009. Accordingly, we affirm the trial court's decision denying Bostic's motion for a directed verdict.[1]
CONCLUSION
Accordingly, we affirm in part, reverse in part, and remand for entry of judgment consistent with this opinion.
HUFF and MCDONALD, JJ., concur,

Bostic also appeals the portion of the trial court's order finding the statute of limitations was tolled during the time Marick's officers controlled the HOA board. In light of our decision on the statute of limitations issue presented, we decline to reach the equitable tolling issue. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding the appellate court need not address remaining issue when disposition of prior issue is dispositive).