389 S.C. 611 (2010)
698 S.E.2d 879
Tommy LOGAN, Appellant,
v.
CHEROKEE LANDSCAPING AND GRADING CO. and the Gaffney Board of Public Works, Defendants,
Of whom the Gaffney Board of Public Works is the Respondent.
No. 4727.
Court of Appeals of South Carolina.
Submitted May 3, 2010.
Decided August 18, 2010.
*615 Cynthia B. Patterson, of Columbia, Emmette J. Saleeby, of Spartanburg and Donald R. Moorhead, of Greenville, for Appellant.
William B. Darwin, Jr., of Spartanburg, for Respondent.
SHORT, J.
Tommy Logan appeals from the trial court's order granting the Gaffney Board of Public Works' (the Board) motion to dismiss Logan's negligence action based on the statute of limitations. Logan argues the trial court erred by granting the Board's motion because discovery was not complete, and the Board's denial of any involvement caused Logan to sue only Cherokee Landscaping. We affirm.[1]

FACTS
On January 23, 2003, Logan was removing snow from Spring Street in Gaffney, South Carolina, when the blade of his front-end loader struck a manhole cover, and as a result, he was thrown into the windshield of his vehicle and seriously injured.[2] Prior to the accident, in October 2002, Cherokee Landscaping and Grading Company (Cherokee) resurfaced Spring Street by paving it with asphalt. On October 29, 2004, Logan sent a Freedom of Information Act (FOIA) request to the Board for "any and all information regarding road work done on Spring Street and/or Turner Street in Gaffney, South Carolina." In response, on November 30, 2004, the Board's attorney stated the Board "reviewed [its] files and [had] no design documents, work orders, specific or general, dates of paving, dates of sewer work or any other information pertaining to any work performed on Spring and/or Turner Streets."
On December 9, 2005, Logan filed a negligence action against Cherokee, alleging it had a duty to the public and Logan to pave or resurface the street in a reasonable manner *616 to minimize the risk of injury to the users of the street. In its answer, dated March 20, 2006, Cherokee stated as a defense that the Board was "responsible for placing the manhole cover and/or ring on the roadway in question, such that any defect and/or problem with the manhole cover and/or ring would be the responsibility of the [Board]." Therefore, Cherokee asserted the Board was liable for any injuries suffered by Logan. Cherokee also alleged that Logan failed to bring the action against it within the applicable statute of limitations, and thus, the action should be dismissed.[3]
On August 22, 2007, Logan filed an amended complaint, adding the Board as a party and alleging the Board should have known the manhole's condition created an unreasonable risk of personal injury to the users of Spring Street. The Board moved for dismissal under Rule 12(b)(6), SCRCP, on September 21, 2007, asserting Logan failed to bring the action against the Board within the two-year statute of limitations set forth in the South Carolina Tort Claims Act. In response, Logan asserted the statute of limitations had not run because the supervisors and employees of the Board "intentionally or negligently provided incomplete and/or inaccurate information to [Logan] in an attempt to prevent [Logan] from filing a lawsuit against the Board"; therefore, Logan argued the Board should be equitably estopped from asserting the defense of the statute of limitations. The court heard Cherokee's motion for summary judgment and the Board's motion to dismiss on December 17, 2007. During the hearing, the court denied Cherokee's motion for summary judgment. Thereafter, on March 6, 2008, the court granted the Board's motion to dismiss, finding Logan had failed to (1) commence suit against the Board within the two-year statute of limitations, and (2) offer any evidence that would estop the Board from asserting the two-year deadline for bringing the action. This appeal followed.

STANDARD OF REVIEW
When reviewing a dismissal of a claim for failure to state facts sufficient to constitute a cause of action under Rule *617 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court. Sloan Constr. Co. v. Southco Grassing, Inc., 377 S.C. 108, 112, 659 S.E.2d 158, 161 (2008). "The question for the court is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the allegations set forth on the face of the complaint state any valid claim for relief." Id. at 112-113, 659 S.E.2d at 161. The court will not sustain the motion if the "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." Stiles v. Onorato, 318 S.C. 297, 300, 457 S.E.2d 601, 603 (1995).[4]

LAW/ANALYSIS
Logan argues the trial court erred in granting the Board's motion to dismiss because the Board's denial of any involvement caused Logan to sue only Cherokee Landscaping. Specifically, Logan asserts the Board should have been estopped from asserting the statute of limitations defense because it misled Logan by denying any involvement with the manhole cover that resulted in Logan's injury. We disagree.
This action is governed by the South Carolina Tort Claims Act's two-year statute of limitations period for tort claims brought against a governmental entity.[5] S.C.Code *618 Ann. § 15-78-100(a) (2005). The courts of South Carolina apply the "discovery rule" to determine when a cause of action accrues under the Tort Claims Act. Bayle v. S.C. Dep't of Transp., 344 S.C. 115, 123, 542 S.E.2d 736, 740 (Ct.App.2001). According to the discovery rule, the statute of limitations begins to run from the date the injury resulting from the wrongful conduct either is discovered or may have been discovered by the exercise of reasonable diligence. Id. "The date on which discovery of the cause of action should have been made is an objective, rather than a subjective, question." Id. If there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury. Moriarty v. Garden Sanctuary Church of God, 341 S.C. 320, 338-39, 534 S.E.2d 672, 681-82 (2000). "One purpose of a statute of limitations is `to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his rights.'" Moates v. Bobb, 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996) (quoting McKinney v. CSX Transp., Inc., 298 S.C. 47, 49-50, 378 S.E.2d 69, 70 (Ct.App.1989)). "Another purpose of the statute of limitations is to protect potential defendants from protracted fear of litigation." Moates, 322 S.C. at 176, 470 S.E.2d at 404.
However, "[i]n South Carolina, a defendant may be estopped from claiming the statute of limitations as a defense if some conduct or representation by the defendant has induced the plaintiff to delay in filing suit." Hedgepath v. Am. Tel. & Tel. Co., 348 S.C. 340, 360, 559 S.E.2d 327, 338 (Ct.App.2001). "An inducement for delay may consist of either an express representation that the claim will be settled without litigation or other conduct that suggests a lawsuit is not necessary." Id. An intentional misrepresentation is not required for the application of equitable estoppel. Id. at 361, 559 S.E.2d at 339. "It is sufficient if the plaintiff reasonably relied upon the words or conduct of the defendant in allowing the limitations period to expire." Id. Whether the defendant's actions lulled the plaintiff into a false sense of security is usually a question of fact; however, summary judgment is *619 proper if there is no evidence of conduct on the defendant's part warranting estoppel. Id. at 361, 559 S.E.2d at 339.
The "elements of equitable estoppel as to the party estopped are: (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts." Zabinski v. Bright Acres Assocs., 346 S.C. 580, 589, 553 S.E.2d 110, 114 (2001). Estoppel may apply against a government agency, but "the party asserting estoppel against the government must prove: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) justifiable reliance upon the government's conduct; and (3) a prejudicial change in position." Am. Legion Post 15 v. Horry County, 381 S.C. 576, 584, 674 S.E.2d 181, 185 (Ct.App.2009).
Logan asserts the Board should have been estopped from asserting the statute of limitations as a defense because it misled him by denying it had any involvement with the manhole cover that resulted in his injury. Logan claims he filed suit against only Cherokee based on the Board's representations that (1) the paving company was responsible for placing the risers on the manholes and paving to the height of the manholes; and (2) the Board would have created a work order if any work had been done to the Spring Street manholes and no work order could be found. Therefore, he maintains the Board's actions created a genuine issue of material fact, and summary judgment was inappropriate.
Some time prior to the hearing on the Board's motion to dismiss, Logan took the depositions of six of the Board's employees, and the owner of Cherokee Landscaping. Kimberly Fortner, the Assistant Manager and Operations Engineer at the Board, stated in her deposition that she could not find any record of a repair, installation, modification, change, or any kind of work done on a manhole cover, manhole cover ring, or the sewer system on Spring Street at any time after October 2002. She also said anything to do with manholes, manhole covers, and the sewer system falls solely within the province and responsibility of the Board.
*620 In his deposition, Donnie Hardin, the Board's general manager, stated the Board is the only entity in the city responsible for the sewer system. Hardin asserted they had searched their records and did not find any records pertaining to sewer work on Spring Street. He added it was the Board's standard procedure to make a record of any sewer work completed; however, he could not positively say the procedure had been followed in this instance. He stated the Board is not responsible for paving streets. Hardin explained the city notifies the Board when it paves a road, and before the paving begins, the Board verifies the manholes correspond with what is intended to be the final level of the road.
Tommy Couch, who was the water and sewer superintendent in 2002, testified during his deposition that he would know if any maintenance had been done on the manholes in the area, and he was not aware of any work having being done on Spring Street. However, Couch stated the Board did not actually install the manhole risers. He said the Board delivered the risers to the paving company, and the pavers installed the risers as they paved the street.
Bob Green, an employee in the sewer and water division, also stated in his deposition that the Board's procedure in 2002 was to deliver the manhole risers to the paving company to install. However, in his affidavit, Green stated he had received a call from Couch that a resident had complained about a manhole on Spring Street after the street had been paved. When Green inspected the manhole, he discovered it was "dished-down" and needed to be fixed by chipping out around the manhole, installing a new riser ring, and patching around the manhole. Green did not have the appropriate equipment with him to make the repairs, so he told Couch what repairs were needed, and Couch told him he sent someone to make the repairs.
Matt Sellers, who was hired in 2005 as the water and sewer superintendent, said in his deposition it was the Board's procedure to deliver the manhole risers to the subcontractor for it to install.
Wade Hampton, the Board's coordinator of construction, stated during his deposition that there was a one-inch deep hole in the road when Cherokee was finished paving the *621 street. He said he heard Couch call Green to fix the hole, but he did not know if it was repaired. However, he also made the following statement:
We went out there and cut a little circle around chipping the asphalt out around the manhole and set a two-inch riser on it, and we didn't go back to asphalt around it like we're supposed to . . . because it wasn't the right riser, but it was sticking up about an inch high, which it's not supposed to be.
James Brown, the owner of Cherokee Landscaping, stated during his deposition that he contacts the Board when they pave a road, and the Board delivers the rings for the manholes. He said Green came to Spring Street while they were paving, but he did not have a riser to fit the manhole. Brown stated when Cherokee does not have a riser for a manhole, it dishes the road around the manhole, and someone returns later to cut the pavement and install the correct ring. He said it is not his responsibility to return to cut around the manhole if the Board does not have a ring to fit the manhole while they are paving. In this case, Brown said the road dipped around the manhole when he left the job.
The exercise of reasonable diligence means an injured party must act with some promptness where the facts and circumstances of the injury would put a person of common knowledge and experience on notice that a claim against another party might exist. Hedgepath, 348 S.C. at 355, 559 S.E.2d at 336. Logan's complaint stated his injury occurred on January 23, 2003, when his front-end loader struck a manhole. In his memorandum in opposition to the Board's motion to dismiss, Logan's attorney stated he spoke with Hardin, the Board's general manager, on October 14, 2004. During their conversation, Hardin told Logan's counsel that "the Board was responsible for all sewer work done in Gaffney, but the Board did not pave roads, although they may have raised the manhole cover prior to paving but only to the height that the paving contractor specified." Therefore, the statute of limitations most likely began to run on January 23, 2003, the date of Logan's injury, and at the latest, the statute of limitations began to run on October 14, 2004, when Logan discovered the Board was responsible for all sewer work and *622 may have worked on the manhole that caused his injuries. Furthermore, in its answer, dated March 20, 2006, Cherokee asserted the Board was liable for any injuries suffered by Logan. Considering all of this, Logan did not file his amended complaint against the Board until August 22, 2007, a little more than four and a half years after the accident.
We sympathize with Logan because he has suffered a terrible injury; however, it appears the Board did not do anything to intentionally mislead Logan into believing it did not have any involvement with the manhole cover that resulted in Logan's injury. Hardin told Logan's attorney the Board was responsible for all manholes in Gaffney; Logan did not present any evidence the Board's FOIA request response was false or misleading; and although there was conflicting testimony, none of the depositions taken by Logan contradict Hardin's statements to his attorney or the Board's FOIA response. Therefore, we find Logan is not entitled to the application of equitable estoppel in this case, and because Logan did not timely bring this action against the Board, we affirm the trial court's order dismissing Logan's claims against the Board.
Logan also argues the trial court erred in granting the Board's motion to dismiss because discovery was not complete. We find this issue is not preserved for our review.
At the December 2007 hearing, Logan made the incomplete discovery argument to the trial court in response to Cherokee's motion for summary judgment. Logan's attorney argued Cherokee's motion was premature because he had just discovered additional information and he needed "to talk to some additional workers and we need to get some response to our discovery from the [B]oard." However, when the court asked Logan's attorney about the witness he thought was relevant, he replied, "we don't know yet if we have a witness because we haven't got any response from the [B]oard to our discovery." The court then denied Cherokee's motion for summary judgment after asking Logan's attorney if he was "making a reasonable representation that there [was] some other witness out there that [he thought was] relevant," and Logan's attorney replied in the affirmative.
*623 At the same hearing, after the judge had ruled on Cherokee's motion, the Board argued its motion to dismiss. In Logan's memorandum in opposition to the Board's motion to dismiss and during the hearing, Logan argued the Board should be estopped from asserting the statute of limitations. Logan did not again mention that discovery was incomplete. After the hearing, the court granted the Board's motion to dismiss, finding Logan had failed to commence suit against the Board within the two-year statute of limitations, and failed to offer any evidence that would estop the Board from asserting the two-year deadline for bringing the action. Logan did not file a Rule 59(e), SCRCP, motion to reconsider. Therefore, because Logan did not argue the Board's motion to dismiss should be denied because discovery was incomplete, we find this issue is not preserved for our review. Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); State v. Dunbar, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) (holding a party may not argue one set of grounds below and alternate grounds on appeal).

CONCLUSION
Accordingly, the trial court's order is
AFFIRMED.
HUFF and WILLIAMS, JJ., concur.
NOTES
[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] During the accident, Logan suffered ruptured disks at C3-4 and C4-5, which resulted in a two-level fusion, spinal cord damage, and partial paralysis of his right hand, arm, and leg.
[3] At some point, Cherokee filed a motion for summary judgment; however, the motion was not included in the record on appeal.
[4] On appeal, Logan argues the Rule 12(b)(6) motion was converted into a motion for summary judgment because the trial court considered matters outside of the amended complaint by undertaking to determine when the statute of limitations began. Therefore, Logan asserts this case must be reviewed as a grant of a motion for summary judgment, and not as grant of a motion to dismiss. Summary judgment should only be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Hedgepath v. Am. Tel. & Tel. Co., 348 S.C. 340, 354, 559 S.E.2d 327, 335 (Ct.App.2001). "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." Id. at 355, 559 S.E.2d at 335. "However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted." Id. at 355, 559 S.E.2d at 336. We agree with Logan that the trial court considered more than just the face of the complaint in determining when the statute of limitations began; however, under either standard of review, we still reach the same result.
[5] The South Carolina Tort Claims Act further provides the limitations period is extended an additional year, for a total of three years, when the claimant files a verified claim within one year of the loss or injury. S.C.Code Ann. §§ 15-78-80, -100(a) (2005). Logan did not present any evidence that he filed a verified claim; therefore, the applicable statute of limitations is two years.