781 S.E.2d 105

Claude McALHANY, Appellant,

v.

Kenneth A. CARTER, Sr. d/b/a Carter & Son Pest
Control, Carter & Son Pest Control, Inc., and
Erick Cogburn, Respondents.

Appellate Case No. 2013–000578.
No. 5360.

Court of Appeals of South Carolina.

Heard March 3, 2015.
Decided Nov. 12, 2015.
Rehearing Denied Jan. 28, 2016.

56

Richard Alexander Murdaugh and William Franklin Barnes, III, both of Peters, Murdaugh, Parker, Eltzroth & Detrick, PA, of Hampton, for appellant.

Richard B. Ness and Alison Dennis Hood, both of Ness & Jett, LLC, of Bamberg, for respondent Erick Cogburn; and Danielle F. Payne, of Grier, Cox, & Cranshaw, LLC, of Columbia, for respondents, Kenneth A. Carter, Sr. d/b/a Carter & Son Pest Control and Carter & Son Pest Control, Inc.

LOCKEMY, J.

In this negligence action, Claude McAlhany appeals the trial court's grant of summary judgment to Respondents Kenneth A. Carter, Sr. d/b/a Carter & Son Pest Control, Carter & Son Pest Control, Inc., and Erick Cogburn. McAlhany argues the trial court erred in finding the statute of limitations barred his property damage and personal injury claims. He further asserts the trial court erred in finding there was no evidence to support his personal injury claim. We reverse the trial court's grant of summary judgment and remand for further proceedings.

## FACTS

In March 2007, Erick Cogburn purchased a house located at 3633 Faust Street (the home) in Bamberg. As part of the purchase, Cogburn asked Respondents Kenneth A. Carter, Sr. (Kenneth) d/b/a Carter & Son Pest Control and Carter & Son Pest Control, Inc. (collectively, Carter) to conduct a termite inspection on the home because Cogburn intended to "flip it." On March 20, 2007, Carter inspected the home and issued a South Carolina Wood Infestation Report, also known as a CL-100 (the March 2007 CL-100). According to the March 2007 CL-100, "[d]ue to the presence of water damage to the window sills, [Carter] has recommended termite treatment." The report noted "[t]here is visible water damage to the front [and] rear window sills." It further stated, "Wood and ground moisture is not available due to the building being on a cement slab." Finally, the report stated the visible water damage to the front and rear window sills was "being repaired by a licensed contractor." After the March 2007 inspection, Cogburn purchased a termite warranty from Carter that covered the cost of additional termite treatment for one year.

After purchasing the home, Cogburn began making repairs, including a new roof, new crown molding, new baseboard molding, new cabinet facings, tile on the kitchen backsplash, ceramic tile on the kitchen countertops, and new flooring. Cogburn stated that during the time he made the repairs, he never saw any "water seepage issues" or mold inside the home.

On November 5, 2007, Cogburn sold the home to McAlhany. Prior to the closing, Carter again inspected the home for

termites and issued a second CL–100 on October 19, 2007 (the October 2007 CL–100). The October 2007 CL–100 found no "visible evidence of active ... subterranean termites" or "other wood destroying insects," but it did find evidence of a prior infestation of subterranean termites. Like the March 2007 CL–100, the October 2007 CL–100 stated, "Wood and ground moisture is not available due to the building being on a cement slab."

On April 7, 2011, McAlhany sued Carter and Cogburn, alleging Carter was negligent in its October 2007 inspection of the home and the October 2007 CL–100 was not performed in accordance with the South Carolina Pesticide Control Act (the Act).[1] According to his complaint, McAlhany was injured on August 16, 2009, while painting one of the home's interior walls, when a paint roller penetrated sheetrock, releasing mold spores into the air, which he inhaled. Upon further investigation, McAlhany discovered mold behind the home's interior walls. McAlhany claimed Carter was negligent in failing to conduct a reasonable inspection of the home's premises, failing to act as a reasonably prudent company would act under the same or similar circumstances, and failing to satisfy the applicable provisions of the Act. As a result of Carter's negligence, McAlhany claimed property damages to his home and personal injury damages. McAlhany explained in his deposition that the mold spores had caused him sinus problems, his eyes "burn and itch like crazy," he developed sores on his body, suffered nosebleeds, and suffered lost wages. In addition to the negligence claim against Carter, McAlhany sued Cogburn for negligent misrepresentation for failing to accurately disclose the home's condition prior to selling it to him.

Carter and Cogburn both filed answers, asserting the statute of limitations as a defense, among others. They later moved for summary judgment on the grounds that the statute of limitations barred all of McAlhany's claims. McAlhany argued the statute of limitations did not bar his claims because he did not discover mold in the home until August 2009 when he was injured by the mold spores, and he filed his claim

1. *See* S.C.Code Ann. § 46–13–10 (1987 & Supp.2014).

within three years of that date. At the summary judgment hearing, the trial court considered the following evidence.

Kenneth explained in a deposition that a CL–100 inspection determines if a home has an infestation of termites, rotten wood caused by termites, or visible damage caused by termites. A bank typically requires a CL–100 inspection if the purchaser is borrowing money to buy the home. As part of conducting a CL–100 inspection, the inspector crawls under the home with a flashlight and "moisture reader," looking for visible damage from moisture and termites. Upon touching the surface of the wood with the moisture reader, the probe gives an immediate reading. Kenneth stated he looks for moisture and termites in every CL–100 inspection; however, he does not use a moisture reader to check moisture levels unless he sees visible evidence of moisture or termite damage. He explained that moisture levels in wood "cannot be above 20[%] ... 28[%] max" because fungus can develop. According to Kenneth, fungus "leaves a white powder" on wood, which prompts him to do a moisture test. He stated, however, that the Official Code of the South Carolina Pesticide and Fertilizer Regulations do not require that he check moisture levels in areas of the home where there is no visible damage. He further stated a CL–100 inspection does not check a home for mold, he was not licensed to deal with mold, and "[m]old has nothing to do with infestation of termites." Kenneth explained that he was prevented from checking the moisture levels on the first floor of the home during both the March and October 2007 inspections because the home had "slab flooring."

The following colloquy occurred during Kenneth's deposition:

Q: So you didn't do [a] moisture test in either instance, March or October of 2007?

A: All the way around the, couple of places I seen that was wet and rotten that I asked Mr. Cogburn to replace.

Q: So if you observed wet rotten wood, that prompts you to do the moisture test?

A: Yes.

Kenneth explained that at the time of the March 2007 CL–100, he knew the home had "water issues," which is a common

problem for homes built on an incline of more than five feet. Kenneth stated he was "sure" he informed Cogburn of the water issues within the home before Cogburn sold the home to McAlhany. Specifically, Kenneth testified that before his company re-inspected the home in October 2007, Cogburn had repaired the water damage to the home that was discovered in the March 2007 CL–100. Cogburn, however, stated Kenneth never told him of any of the water damage found during the March 2007 CL–100 inspection. According to Cogburn, he first learned of moisture problems or mold damage in the home in August 2009 when McAlhany showed him molded sheetrock in one of the downstairs bedrooms.

In his deposition, McAlhany explained that he was suing Carter for negligence because his company failed to conduct moisture tests on the home during the October 2007 CL–100 that would have revealed high moisture levels in the walls.

McAlhany asserted that had he known there were high moisture levels in the home, he would have cut the sheetrock out of the walls to determine the source of the moisture. He explained that he reviewed the October 2007 CL–100 when it was issued and saw nothing that concerned him. McAlhany testified Kristi Lenox of Clemson University later told him a CL–100 required the inspector to check moisture levels in the home. He introduced into evidence a "Report of Structural Pest Inspection" issued on October 9, 2009, by Clemson University (the Clemson report). The Clemson report found the October 2007 CL–100 "did not comply with [s]ection 27–1085 K of the Rules and Regulations for the Enforcement of the [Act]. Although evidence of a previous infestation of subterranean termites was disclosed, the location of that infestation and the accompanying damage was not disclosed."

McAlhany testified he moved into the home approximately two weeks before the closing, which would have been mid to late October 2007. He stated that prior to purchasing the home, Cogburn informed him that the home had been treated for termites by Carter. McAlhany did not request nor was a property disclosure form filled out by Cogburn and given to McAlhany prior to the purchase of the home. Although McAlhany inspected the home prior to purchasing it, he was unsure if a building inspector inspected the home.

After McAlhany moved in, he painted the living room, painted some upstairs rooms, and replaced the floor on the first floor. He stated the floor had to be replaced because the home flooded about seven months after he moved in. He further stated Cogburn first told him the home had flooding problems around June 2008, and he would not have purchased the home had he known it had flooding problems.

McAlhany's testimony was unclear as to when he discovered mold within the home. Initially, he claimed he first discovered mold in "late '08"; however, he later stated it was "probably '09" or August 2009 when he was painting the downstairs, and the mold spores injured him. McAlhany also testified he discovered "black mold" when he "very first moved in" and replaced the floor on the first floor of the home. He explained that in 2007, he consulted with a mold specialist, who told him to use bleach "and clean it up and put down the new flooring." McAlhany later claimed he replaced that floor seven months after he purchased the home, which would have been approximately June 2008. He admitted, however, that in October 2007, he was aware Carter "had not done its job properly." He further admitted he learned of termite problems in the home "[t]he day and hour [he] purchased the house." Later, McAlhany was asked, "So ... there were termites and water damage prior to you purchasing the house?" and he responded, "Not water damage."

The trial court granted summary judgment to Carter and Cogburn, finding McAlhany's claims were barred by the three-year statute of limitations. It concluded McAlhany "knew or should have known by the exercise of reasonable diligence of the alleged termite and mold problems in October or November of 2007...." The trial court rejected McAlhany's claim that he did not discover mold in the home until 2009, finding he "testified thoroughly that he discovered in 2007 that the prior owner had not installed a proper moisture barrier and found mold when he pulled back the existing hardwood floor." As to his property damage claim, the court found that "[h]ad [McAlhany] conducted a reasonable investigation ... [he] would have uncovered additional areas within the first floor of the home that also did not have a proper moisture barrier and contained mold." Next, the court concluded the statute of limitations barred McAlhany's personal injury action because

the "personal injury and property damage are indivisible and caused by the same alleged negligent act of [Carter and Cogburn]." Finally, the trial court found McAlhany presented no evidence to support a personal injury action against Carter.[2] McAlhany filed a Rule 59(e), SCRCP, motion for reconsideration, which the trial court denied. This appeal followed.

## STANDARD OF REVIEW

■■ "Summary judgment is appropriate when a plaintiff does not commence an action within the applicable statute of limitations." *McMaster v. Dewitt*, 411 S.C. 138, 143, 767 S.E.2d 451, 453 (Ct.App.2014), *cert denied*. "An appellate court reviews the granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000), *holding modified on other grounds by State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Rule 56(c), SCRCP). "Summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of the law." *Id.* "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts." *Id.* "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn

2. Although the trial court's order indicates it granted summary judgment to Carter and Cogburn, the order does not specifically address McAlhany's negligent misrepresentation claim against Cogburn, which is the only claim McAlhany brought against Cogburn. Instead, it appears that for purposes of the statute of limitations, the court treated the negligent misrepresentation claim against Cogburn and the negligence claim against Carter as one "negligence" claim. Moreover, in his appellate brief, McAlhany does not specifically address the negligent misrepresentation claim. Nevertheless, at oral argument, both parties agreed the court granted summary judgment to Cogburn and that McAlhany had appealed that ruling. Therefore, the negligent misrepresentation claim is properly before us on appeal.

from the evidence in the light most favorable to the non-moving party." *Id.*

## LAW/ANALYSIS

### I. Property Damage Claim

McAlhany argues the trial court erred in finding the statute of limitations barred his property damage claim. Specifically, he asserts his testimony created a question of fact as to when he "first learned of any problems with the home"; however, the trial court failed to view McAlhany's testimony in the light most favorable to him. We agree.

Subsection 15–3–530(3) of the South Carolina Code (2005) provides for a three-year statute of limitations for "an action for trespass upon or damage to real property." According to the discovery rule, " 'the three-year statute of limitations begins to run when the underlying cause of action reasonably ought to have been discovered.' " *Holly Woods Ass'n of Residence Owners v. Hiller,* 392 S.C. 172, 183, 708 S.E.2d 787, 793 (Ct.App.2011) (quoting *Martin v. Companion Healthcare Corp.,* 357 S.C. 570, 575, 593 S.E.2d 624, 627 (Ct.App.2004)). "The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Dean v. Ruscon Corp.,* 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996). "The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Epstein v. Brown,* 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005). "[T]he fact that the injured party may not comprehend the full extent of the damage is immaterial." *Dean,* 321 S.C. at 364, 468 S.E.2d at 647. "The date on which discovery should have been made is an objective, not subjective, question." *Kreutner v. David,* 320 S.C. 283, 285, 465 S.E.2d 88, 90 (1995).

Viewing the evidence in the light most favorable to McAlhany, we find the trial court erred in finding the statute of limitations barred his claim for property damages. The trial court's finding that the statute of limitations had expired was

based on a factual finding that McAlhany "testified thoroughly that he discovered in 2007 that the prior owner had not installed a proper moisture barrier and found mold when he pulled back the existing hardwood floor." Based on our review of the record, however, we believe McAlhany's testimony was conflicting as to when he first discovered mold within the home. *See Logan v. Cherokee Landscaping & Grading Co.*, 389 S.C. 611, 618, 698 S.E.2d 879, 883 (Ct.App.2010) ("If there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury."); *Arant v. Kressler*, 327 S.C. 225, 229, 489 S.E.2d 206, 208 (1997) ("When there is conflicting testimony regarding the time of discovery, it becomes an issue for the jury to decide."); *Johnston v. Bowen*, 313 S.C. 61, 64, 437 S.E.2d 45, 47 (1993) ("Whether a claimant knew or should have known that they had a cause of action is question for the jury.").

At one point in his deposition, McAlhany stated he first discovered mold in August 2009. He later claimed he saw "black mold" when he first moved into the home, which would have been late October 2007, while replacing the floor on the first floor of the home. He later testified, however, that he did not replace the floor until seven months after he moved in, which would have been June 2008. Because McAlhany's testimony as to when he discovered mold within the home was conflicting, a question of fact existed as to this issue. Furthermore, the date McAlhany discovered mold in the home was a material fact because, assuming the statute of limitations was not triggered until June 2008, his lawsuit would have been timely filed in April 2011.

Carter and Cogburn rely on the case of *McMaster v. Dewitt*, 411 S.C. 138, 767 S.E.2d 451 (Ct.App.2014), *cert denied*, for the proposition that a plaintiff "cannot manufacture a genuine issue of material fact ... by submitting conflicting statements of fact ... either by affidavit or within one's own deposition testimony." *McMaster* involved a medical malpractice claim brought against a doctor for overprescribing the appellant the drug Adderall. *Id.* at 141, 767 S.E.2d at 452. The trial court granted summary judgment to the doctor, finding the statute of limitations barred the action. *Id.* On appeal, the appellant argued summary judgment was improp-

er because, although the appellant's deposition testimony indicated he failed to file his action within three years from when he was aware of the cause of his injury, the trial court erred in not considering his affidavit, which contained evidence that contradicted his deposition testimony. *Id.* at 148–49, 767 S.E.2d at 456. We concluded the trial court did not abuse its discretion in excluding the affidavit as a "sham affidavit." *Id.* at 149–51, 767 S.E.2d at 456–58. Specifically, we noted the statements contained in the affidavit differed greatly from the appellant's testimony, the appellant offered no explanation for his contradictory statements, and "[t]he last-minute submission of the affidavit indicate[d] [he] was attempting to create an issue of fact for purposes of summary judgment." *Id.*

*McMaster* is distinguishable from the present case for several reasons. First, and perhaps most importantly, McAlhany did not submit a last-minute "sham" affidavit in an attempt to create an issue of fact for summary judgment. Rather, his deposition testimony was conflicting as to when he discovered mold within the home. In contrast, the appellant's deposition testimony in *McMaster* was consistent as to when he learned the cause of his injury. Moreover, the inconsistencies in McAlhany's recollection of the date he saw mold in the home occurred several times during the same deposition rather than a few days before the summary judgment hearing as in *McMaster.* Thus, a trier of fact could find McAlhany was confused as to the dates rather than purposefully intending to contradict his earlier testimony. *Cf. id.* at 151, 767 S.E.2d at 458 (finding the trial court did not abuse its discretion in excluding a "sham affidavit" that contradicted the appellant's testimony when the affidavit was submitted two days before the summary judgment hearing). Therefore, we find Carter and Cogburn's reliance on *McMaster* is misplaced.

We note with interest that McAlhany sued Carter, a pest control company, for negligence arising out of its inspection of the home and issuance of a CL–100 on October 17, 2007. While the parties dispute the scope of inspection required by a CL–100, it is undisputed that a CL–100 determines if a home has an active infestation of termites. The October 2007 CL–100, which McAlhany reviewed at the time it was issued, found no "visible evidence of active ... subterranean termites" or "other wood destroying insects" within the home. Nonethe-

less, McAlhany's uncontradicted testimony was that he saw active termites in the home on the day he moved in, which would have been late October 2007, and he knew in October 2007 that Carter had not done its job properly. Because McAlhany was aware of termites in the home in late October 2007, and he knew the October CL–100 erroneously stated there were not active termites in the home, a reasonable person would have been on notice of a potential negligence claim against Carter for *termite damage*. Nevertheless, a reasonable person would not have been on notice of a potential negligence claim for *mold damage*. *See Holly Woods Ass'n of Residence Owners*, 392 S.C. at 183, 708 S.E.2d at 793 (stating "the three-year statute of limitations begins to run when the *underlying cause of action* reasonably ought to have been discovered" (emphasis added)). As Kenneth testified, "Mold has nothing to do with infestation of termites." Rather, the three-year statute of limitations for McAlhany's property damage claim did not accrue until a reasonable person would have discovered mold within the home. Because McAlhany presented evidence that he did not discover mold within the home until June 2008 or August 2009, which would have made his lawsuit timely filed in April 2011, the trial court erred in granting summary judgment as to the property damage claim. *See Logan*, 389 S.C. at 618, 698 S.E.2d at 883 ("If there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is one for the jury.").

## II. Personal Injury Claim

McAlhany next argues the trial court erred in finding the statute of limitations barred his personal injury claim because the statute of limitations does not begin to run in a personal injury action until the injured party either knows or should know by the exercise of reasonable diligence that a cause of action has arisen. We agree.

Subsection 15–3–530(5) of the South Carolina Code (2005) provides for a three-year statute of limitations for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law, and those provided for in Section 15–3–545." Section 15–3–545 of the South Carolina Code (2005) provides that,

"Except as to [medical malpractice actions], all actions initiated under Section 15–3–530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."

> The elements of a cause of action in tort for personal injury are (1) duty, (2) breach of that duty, (3) proximate causation, and (4) injury.... The fundamental test ... in determining whether a cause of action has accrued[ ] is whether the party asserting the claim can maintain an action to enforce it. Stated differently, [a] cause of action accrues at the moment when the plaintiff has a legal right to sue on it.

*Grillo v. Speedrite Products, Inc.*, 340 S.C. 498, 502, 532 S.E.2d 1, 3 (Ct.App.2000) (citations and internal quotation marks omitted) (second, third, and fourth alterations in original); *see also Sims v. Amisub of S.C., Inc.*, 414 S.C. 109, 777 S.E.2d 379 (2015) (Shearouse Adv. Sh. No. 31 at 27) ("A cause of action accrues at the moment when the plaintiff has a legal right to sue on it." (internal quotation marks omitted)).

 In addition to his property damage claim, McAlhany sued Carter for personal injuries he allegedly sustained on August 16, 2009, when a paint roller he was using penetrated sheetrock, releasing mold spores into the air, which he inhaled. The trial court determined the statute of limitations for the personal injury claim began at the same time as his property damage claim and therefore this claim was untimely filed. We disagree with the learned trial court. Because a personal injury cause of action cannot accrue until there is an injury, McAlhany's cause of action accrued at the earliest on August 16, 2009—the time he suffered an injury and thus "ha[d] a legal right to sue on it." McAlhany filed his lawsuit on April 7, 2011, which was within three years from the date of accrual. Therefore, the trial court erred in granting summary judgment to Carter and Cogburn on the personal injury claim on the basis of the statute of limitations.

In granting summary judgment, the trial court relied on *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996). In *Dean*, the appellant purchased a building in September 1984 located on King Street in Charleston, and a contractor inspected it and determined it was structurally sound. *Id.* at 362, 468

S.E.2d at 646. In October and November 1984, Ruscon performed pile driving activities at a nearby construction site and, shortly thereafter, Dean saw a three-foot crack at the front right corner of the building and concluded Ruscon's pile driving caused the crack. *Id.* Ruscon resumed pile driving activities in the summer of 1985 and, shortly thereafter, Dean noticed the original crack had expanded and a new crack had formed on the other side of the building. *Id.* at 362, 468 S.E.2d at 646–47. Dean was forced to close her business after inspectors found the building was no longer structurally sound. *Id.* at 362, 468 S.E.2d at 647. In April 1991, Dean filed suit against Ruscon for damage to her building, and at trial, the evidence established that the damage to Dean's building was "most reasonably caused by the pile driving activity" in 1984, not 1985. *Id.* at 362–63, 468 S.E.2d at 647. The trial court granted Ruscon's directed verdict motion, finding Dean's lawsuit accrued in November 1984, when she discovered the damage to her building, and because she did not file her lawsuit until April 1991, the six-year statute of limitations under subsection 15–3–530(3) [3] barred her claim. *Id.* at 363, 468 S.E.2d at 647.

On appeal, our court reversed, finding a question of fact existed as to whether Dean was reasonably diligent in determining whether Ruscon caused the damage to her building thereby triggering the statute of limitations in 1984. *Id.* On appeal to the supreme court, Dean argued the crack in 1984 and the bulging of the bricks in 1985 presented two distinct harms and, therefore, two different dates of accrual existed for purposes of the statute of limitations. *Id.* at 364, 468 S.E.2d at 647. The supreme court disagreed, finding

the resulting harm to Dean's building in 1985–enlarged crack and bulging bricks-by being in the same location and of the same nature as the original harm, evolved from Ruscon's 1984 pile driving activities. Therefore, because the subsequent harm was not separate and distinguishable, it was discoverable in 1984.

*Id.* at 364–65, 468 S.E.2d at 648. The court noted the damage to Dean's building was not latent, but was apparent in Novem-

---

3. This subsection was later amended to provide for a three-year statute of limitations.

ber 1984, and there was "no question that Dean initially discovered the damage in 1984 and associated it with Ruscon's pile driving activities." *Id.* at 365, 468 S.E.2d at 648. Finally, the court concluded "the fact that Dean may not have comprehended in 1984 that the original crack would expand causing the building to ultimately buckle is immaterial." *Id.* at 366, 468 S.E.2d at 648.

We find *Dean* distinguishable from the present case. We note that the trial court relied on *Dean* to find the statute of limitations for McAlhany's personal injury claim began at the same time as his property damage claim because the two injuries were indivisible. As previously stated, however, a question of fact existed as to when a reasonable person would have discovered mold within the home and thus triggered the statute of limitations for the property damage claim. Thus, to the extent the trial court erred in granting summary judgment on the property claim, it likewise erred in doing so on the personal injury claim. Moreover, in *Dean*, both the original harm in 1984 and the subsequent harm in 1985 were property damage; whereas, here McAlhany allegedly suffered personal injury and property damage. Unlike *Dean*, where the appellant knew Ruscon damaged her building in 1984 yet waited until her building was further damaged by similar conduct before filing suit, McAlhany could not have "comprehend[ed] the full extent of his damages" because he had no personal injury damages prior to August 2009. *See Benton v. Roger C. Peace Hosp.*, 313 S.C. 520, 524, 443 S.E.2d 537, 539 (1994) (finding the appellant's negligence claim for neurological injuries resulting from a fall at a hospital was not barred by the statute of limitations because "[t]he nature of the injuries was not readily discoverable" when the fall occurred). Even if McAlhany's personal injuries were indivisible from his property damage, summary judgment was still improper because, as previously discussed, a question of fact existed as to when a reasonable person would have discovered mold in the home. Therefore, the trial court erred in granting summary judgment on McAlhany's personal injury claim.

### III. Evidence Supporting Personal Injury Claim

McAlhany next argues the trial court erred in finding he did not present any evidence to support a personal injury claim against Carter. According to McAlhany, Carter was

negligent because it knew of water damage to the home at the time of the October 2007 CL–100, yet it failed to conduct a moisture test. As a result, the home developed mold, which caused McAlhany's injury in August 2009. We agree.

After finding the statute of limitations barred McAlhany's claims, the trial court determined McAlhany did not present any evidence to support a personal injury claim against Carter. The court found McAlhany's reliance on the Clemson report to support his personal injury claim was misguided because, although the report found the October 2007 CL–100 "did not comply with Section 27–1085 K of the Rules and Regulations for the Enforcement of the [Act,]" it did not indicate Carter's failure to comply with the Act "caused or contributed in any manner to the mold."

We interpret the trial court's ruling that the Clemson report did not indicate that Carter's failure to comply with the Act "caused or contributed in any manner to the mold" to mean that McAlhany failed to establish Carter's alleged negligence was the proximate cause of his personal injuries. *See J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 369, 635 S.E.2d 97, 101 (2006) (stating the elements of negligence are "(1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty"). The Clemson report indicates the October 2007 CL–100 did not comply with the Act because Carter did not disclose the location of a previous termite infestation and accompanying damage. The report does not state an opinion regarding Carter's alleged negligence in failing to discover and disclose mold or moisture damage within the home. In fact, it specifically states "This inspection was not made to address the presence or absence of any health-related molds or fungi. No opinions are given or intended concerning mold-related air quality or other health issues." Thus, we agree the Clemson report does not establish proximate cause because the report does not indicate Carter violated the Act for failing to discover or disclose mold or moisture damage. Nevertheless, McAlhany presented other evidence that created a genuine issue of material fact as to his personal injury claim against Carter. *See Bass v. Gopal, Inc.*, 395 S.C. 129, 134, 716 S.E.2d 910, 912 (2011) ("In a negligence case, where the burden of proof is a preponderance of the evidence standard, the non-moving party must only

submit a mere scintilla of evidence to withstand a motion for summary judgment.").

First, there was evidence Carter had a duty to check moisture levels in the home because Kenneth explained that as part of a CL–100 inspection, he looks for visible damage from moisture and termites. Furthermore, there was evidence Carter knew the home previously had water damage. The March 2007 CL–100 indicates "visible water damage to the front [and] rear window sills" of the home, and Kenneth admitted he was aware of this damage to the home. The record, however, is unclear as to whether and to what extent Carter checked for moisture levels in the home. The March and October 2007 CL–100 reports indicate "[w]ood and ground moisture is not available due to the [home] being on a cement slab"; however, when Kenneth was asked whether he checked the home for moisture he replied, "All the way around the, couple of places I seen that was wet and rotten that I asked Mr. Cogburn to replace." One inference from Kenneth's testimony is that he checked the moisture levels of certain areas in the home; however, he did not disclose the moisture levels in either of the CL–100 reports.

We believe the evidence that Kenneth was aware of water issues in the home, yet apparently did not check and disclose the moisture levels in the October 2007 CL–100 created a question of fact as to whether Carter's inspection in the October 2007 CL–100 fell below the standard of care. There was also evidence that McAlhany's personal injuries would not have occurred but for Carter's negligence. *See J.T. Baggerly,* 370 S.C. at 369, 635 S.E.2d at 101 (stating "[p]roximate cause requires proof of: (1) causation-in-fact, and (2) legal cause. Causation-in-fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence" (citation omitted)). McAlhany testified that had he known there were high moisture levels in the home, he would have removed sheetrock from the walls to determine the source of the moisture. Thus, there is evidence that had Carter disclosed the moisture levels in the home, McAlhany would not have been injured.

Finally, we believe further inquiry into the facts is desirable as to this issue based on the language of the trial court's order. *See Carolina Chloride, Inc. v. S.C. Dep't of Transp.,*

391 S.C. 429, 434, 706 S.E.2d 501, 504 (2011) ("Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law."). The trial court clearly granted summary judgment on the personal injury claim due to the running of the statute of limitations; however, its order is unclear as to whether it granted summary judgment to Carter on the ground that McAlhany did not present any evidence to support this claim. The trial court's analysis on this issue was limited to one sentence: "The [Clemson] report does not indicate that [Carter's] failure to comply with [the] Act caused or contributed in any manner to mold." As previously stated, however, McAlhany presented other evidence that, when viewed in the light most favorable to the non-moving party, created a question of fact as to whether any negligence by Carter caused McAlhany's injuries. Therefore, the trial court erred in finding McAlhany did not present any evidence to support his personal injury claim against Carter.

## CONCLUSION

Based on the foregoing, we reverse the trial court's grant of summary judgment to Respondents and remand for further proceedings.

**REVERSED AND REMANDED.**

SHORT and McDONALD, JJ., concur.