**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

John M. Hine and Maria W. Hine, Appellants,

v.

Timothy M. McCrory, individually and as agent, Michael P. McCrory, Seabrook L. Marchant, and The Marchant Company, Respondents.

Appellate Case No. 2019-001375

———————————

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

———————————

Unpublished Opinion No. 2023-UP-241
Heard September 12, 2022 – Filed June 14, 2023

———————————

**AFFIRMED**

———————————

John Michael Hine, of The Hine Law Firm, LLC, of Greenville, Matthew Todd Carroll, of Womble Bond Dickinson (US), LLP, and Bryant Sparks Caldwell, both of Columbia, all for Appellants.

David Allen Anderson, Carmen Vaughn Ganjehsani, and James Belford Robey, III, of Richardson Plowden & Robinson, PA, of Columbia, for Respondents Timothy M. McCrory, Seabrook L. Marchant, and The Marchant Company. Hunter Chase Harbin, of Law Office of H.

Chase Harbin, PA, of Greenville, for Respondent Michael P. McCrory.

**PER CURIAM:** John and Marie Hine (collectively, Appellants) appeal the circuit court's order granting summary judgment to Timothy "Tim" McCrory, Michael "Mike" McCrory, Seabrook Marchant, and The Marchant Company (collectively, Respondents), arguing the court erred in finding Appellants' 2012 discovery of a rather minor amount of undisclosed termite damage put them on notice as to more extensive damage discovered in another part of their home in 2018. We affirm.

**Facts and Procedural History**

On September 7, 2005, Tim McCrory and his brother, Mike, jointly purchased 416 Leyswood Drive in Greenville County (the Property), a single-story ranch house with a partially finished basement. After renovating a portion of the house, the McCrorys listed it for sale on May 14, 2008.[1] In their residential property condition disclosure statement (the Disclosure Statement), the McCrorys stated: "The two rooms in the basement were framed out, sheetrocked in 2005. Hardwood floors were added. There used to be paneling for the walls and we ripped that out to add wood studs (2x4) and sheetrock. Ask seller for all work done." The Disclosure Statement did not indicate whether the Property was under a termite bond during the time of the McCrorys' ownership.

On May 27, 2008, Appellants contracted with the McCrorys for the purchase and sale of the Property for $175,000. Hunter Pest Elimination, LLC, issued a CL-100 Wood Infestation Report (the Report) on June 3, 2008, indicating there were signs of past termite infestation and treatment. Mr. Hine signed the Report at the July 1, 2008 closing. While the Report noted some areas of the Property were obstructed from view or inaccessible, it stated "previous infestation/scorn marks from termite shelter tubes with damage to sills, joist and subfloor was noted right side of garage and to sill right rear of garage." The Report further mentioned "prior treatment/drill holes to exterior foundation wall [indicating] previous termite treatment," "fungi/wood destroying fungi present throughout the basement area," and "discolored wood around HVAC duct boot rear of utility room." Although the Report noted repairs had been made, it stated "some damage remains and should be evaluated by a licensed builder." The Report specified the damage "[w]ill not be

---

[1] Tim McCrory, a realtor, was The Marchant Company's listing agent for the Property. Seabrook Marchant was the broker-in-charge.

corrected by this company; recommend that structure be thoroughly and completely evaluated by a qualified building expert . . . and that needed repairs be made."[2]  Likewise, Pillar to Post, Inc. issued a June 3, 2008 home inspection report recommending Appellants consult "a qualified foundation contractor to evaluate and correct pest damage at joists located near center to rear area of garage/basement area to promote intended use."[3]

Almost four years later, on April 27, 2012, Mr. Hine removed the shoe molding in a bedroom on the front corner of the Property to paint the baseboards and noticed a large gap formed as the molding got closer to the exterior of the house.  Upon further inspection, he discovered caulk or silicone had been injected into this gap. After fully removing the shoe molding, Mr. Hine found extensive damage to the wood studs behind the drywall and called a contractor to further inspect the area. The contractor discovered damaged rim joists, damage to a double joist running above the cinderblock wall in the basement room below the main floor bedroom, and damage to the headers of both windows in an upper bedroom.

On May 14, 2012, Mr. Hine sent a demand letter to Marchant stating:

> This letter is being sent to you as a result of Timothy's status as the Seller's Agent and his employment by you. When the work was done in the basement, as noted in Paragraph 13 of the Disclosure, the damage would have been discovered and subsequently was required to be disclosed.  As a result of the failure to disclose the damage I have incurred extensive costs.  Timothy owed a duty as the listing Agent to disclose the damage which was not repaired.  Pursuant to § 27-50-70 of the South Carolina Code the listing agent is liable for the misrepresentation.

---

[2] On June 6, 2008, Benjamin Shivers of Ben Construction, Inc. performed a builder's inspection as recommended by Hunter Pest Elimination and concluded the damage listed in the Report "is not structural and does not require repair."

[3] On June 9, 2008, Steve Baty of Realty Service & Repair, LLC, performed an inspection as recommended by Pillar to Post and determined "[t]he repairs to the floor joists in the basement at the center and rear appear adequate, and no additional repairs to these appear necessary at this time."

Respondents denied any knowledge of the damage and declined to reimburse. Following the completion of these repairs, Mr. Hine sent an additional demand letter on July 9, 2012, requesting payment of $4000.[4]

In early 2013, Mr. Hine contacted Sargent Pest Solutions to inspect and place the Property under an active termite bond contract. Sargent Pest Solutions inspected the Property on March 28, 2013, and contracted with Hine for treatment of "Existing (Affected wood and live termites)." This contract also contained a notation of "PHD" (possible hidden damage). Although repeatedly asked at oral argument, Appellants were unable to answer affirmatively that Sargent Pest Solutions conducted a full termite inspection of the Property in 2013. Moreover, Mr. Hine conceded in his deposition that he did not ask the contractor who made the 2012-2013 repairs to conduct exploratory testing to locate possible additional termite damage that might exist in other areas of the home.

Appellants subsequently remodeled a hallway bathroom without incident. They also "pulled out everything in the basement" and noted no damage in that area of the house. However, during a bathroom renovation on February 3, 2018, Appellants discovered significant termite damage extending beyond the main bathroom to the basement stairwell and surrounding structural framing. Appellants also found that some of this framing had been patched together with short sections of two-by-four wood studs and then covered with drywall.[5]

On June 18, 2018, Appellants brought suit against the McCrorys, Marchant, and The Marchant Company, asserting claims for fraud, conversion, negligence, and a variety of statutory violations. Respondents denied knowledge or concealment of unrepaired termite damage.

Following discovery, Respondents moved for summary judgment, asserting Appellants' claims were barred by the statute of limitations. In opposition, Appellants argued it would be objectively unreasonable to believe they should have known about over $100,000 of termite damage running from the main

[4] In his deposition, Mr. Hine testified he did not include this damage in the 2018 lawsuit because "[he did not] know that [he had] the evidence to prove that, and [he did not] know that [he was] still entitled to it under the statute of limitations."

[5] The two-by-four wood studs had a bar code stamp date of September 7, 2005, the time period when the McCrory brothers purchased the home.

bathroom to the framing of the staircase because they had previously discovered a relatively minor amount of termite activity on the opposite side of the house. The circuit court granted Respondents' motion for summary judgment, finding Appellants' claims were time barred. Appellants subsequently filed a Rule 59(e), SCRCP, motion to amend, which the circuit court denied.

## Standard of Review

"When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Turner v. Milliman*, 392 S.C. 116, 121–22, 708 S.E.2d 766, 769 (2011). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Hancock v. Mid-South Mgmt. Co., Inc.*, 381 S.C. 326, 329–30, 673 S.E.2d 801, 802 (2009). "Summary judgment is appropriate when a plaintiff does not commence an action within the applicable statute of limitations." *McMaster v. Dewitt*, 411 S.C. 138, 143, 767 S.E.2d 451, 453 (Ct. App. 2014).

## Law and Analysis

### I.    Summary Judgment

Appellants argue the circuit court erred in finding the statute of limitations barred their claims because the parties presented conflicting evidence regarding when Appellants could or should have known a cause of action might exist regarding the undisclosed termite damage. Appellants contend application of the discovery rule and the determination of the date the statute began to run present questions of fact for a jury. In the alternative, Appellants ask this court to set aside any statute of limitations issues as a matter of equity. We find the circuit court properly granted summary judgment.

The parties agree the three-year statute of limitations applies. S.C. Code Ann. § 15-3-530(5) (2005) (providing a three-year statute of limitations for an action for "any injury to the person or rights of another, not arising on contract and not enumerated by law). "Generally, a cause of action accrues under South Carolina law 'the moment the defendant breaches a duty owed to the plaintiff.'" *Barr v. City of Rock Hill*, 330 S.C. 640, 644, 500 S.E.2d 157, 159–60 (Ct. App. 1998) (quoting *Grooms v. Med. Soc'y of S.C.*, 298 S.C. 399, 402, 380 S.E.2d 855, 857 (Ct. App. 1989)); *see also Barr*, 330 S.C. at 645–46, 500 S.E.2d at 160 (holding although homeowner did not realize "the magnitude of the problem" until August 1992, the

circuit court correctly found prior termite inspection reports provided sufficient notice to trigger the running of the statute of limitations). "Under the discovery rule, . . . the statutory period of limitations begins to run when a person *could or should have known*, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto." *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 525–26, 787 S.E.2d 485, 489–90 (2016) (internal citations and quotations omitted); *see also* S.C. Code Ann. § 15-3-535 (2005) ("[A]ll actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.").

Our supreme court has "interpreted the 'exercise of reasonable diligence' to mean that the injured party must act with some promptness" when on notice of a potential claim. *Dean v. Ruscon Corp.*, 321 S.C. 360, 363–64, 468 S.E.2d 645, 647 (1996). "[T]he fact that the injured party may not comprehend the full extent of the damage is immaterial." *Id.* at 364, 468 S.E.2d at 647. Nevertheless, when the parties present conflicting evidence, application of the discovery rule and the determination of the date the statute began to run in a particular case are questions of fact for the jury. *See Arant v. Kressler*, 327 S.C. 225, 229, 489 S.E.2d 206, 208 (1997) (when testimony conflicts regarding the time of discovery of a cause of action, it becomes an issue for the jury to decide).

In *McAlhany v. Carter*, which Appellants argue is controlling, the circuit court granted the defendants' motion for summary judgment based on the statute of limitations. 415 S.C. 54, 57, 781 S.E.2d 105, 107 (Ct. App. 2015). At issue was the plaintiff's deposition testimony regarding when he discovered mold and termites in his home. *Id.* at 60–61, 781 S.E.2d at 109. This court reversed the circuit court's grant of summary judgment, finding:

> McAlhany's uncontradicted testimony was that he saw active termites in the home on the day he moved in, which would have been late October 2007, and he knew in October 2007 that Carter had not done its job properly. Because McAlhany was aware of termites in the home in late October 2007, and he knew the October CL-100 erroneously stated there were not active termites in the home, a reasonable person would have been on notice of a potential negligence claim against Carter for *termite damage*. Nevertheless, a reasonable person would not

> have been on notice of a potential negligence claim for
> *mold damage*.  As Kenneth testified, "Mold has nothing
> to do with infestation of termites."  Rather, the three-year
> statute of limitations for McAlhany's property damage
> claim did not accrue until a reasonable person would
> have discovered mold within the home.  Because
> McAlhany presented evidence that he did not discover
> mold within the home until June 2008 or August 2009,
> which would have made his lawsuit timely filed in April
> 2011, the trial court erred in granting summary judgment
> as to the property damage claim.

*Id.* at 66, 781 S.E.2d at 112 (internal citations omitted).

Unlike the situation in *McAlhany*, there is no conflicting evidence here as to when Appellants first discovered unrepaired termite damage at the Property.  *McAlhany* also involved two distinct harms—termite damage and mold damage.  Here, Appellants discovered a relatively minor amount of unrepaired termite damage in 2012, and six years later discovered more significant unrepaired termite damage in another area of the home.

Our supreme court rejected a similar "two distinct harms" argument in *Dean*, finding the circuit court correctly directed a verdict for a construction company whose pile driving damaged a nearby property.  *Dean*, 321 S.C. at 366, 468 S.E.2d at 648.  Although the court acknowledged Dean may not have comprehended that the original fine crack she discovered in 1984 would expand and cause the building's façade to buckle, Dean's "subsequent failure to act with reasonable diligence" did not justify tolling the statute of limitations.  *Id.* at 365–66, 468 S.E.2d at 648.  The court found the statute of limitations began to run when Dean initially discovered the first small crack—not when she found a larger crack at a different location and learned the building was no longer structurally sound.[6]

---

[6] After oral argument, Appellants properly provided the supplemental citation of *Walbeck v. The I'On Co.*, Op. No. 28134 (S.C. Sup. Ct. filed Feb. 8, 2023) (Howard Adv. Sh. No. 6, at 23, 30–34), in support of their argument that the circuit court erred in finding the statute of limitations barred their claims.  However, the facts of *Walbeck* differ markedly from those presented here.  *Stoneledge at Lake Keowee Owners' Association, Inc. v. IMK Development Co., LLC*, 425 S.C. 268, 821 S.E.2d 504 (Ct. App. 2018), *aff'd in part and rev'd in part*, 435 S.C. 176, 866 S.E.2d 577 (2021), *Holly Woods Association of Residence Owners v. Hiller*, 392

The undisputed evidence in this record demonstrates that when Appellants learned there was unrepaired termite damage on the Property in 2012, they promptly notified Respondents of their claim in the May 14, 2012 letter. Although Appellants did not realize the magnitude of the problem until 2018, we agree with the circuit court that the 2012 discovery triggered the running of the statute of limitations. *See*, *e.g.*, *Allwin v. Russ Cooper Assocs., Inc.*, 426 S.C. 1, 17, 825 S.E.2d 707, 715 (Ct. App. 2019) (finding despite property owner's "actual knowledge of her potential claims for this damage—and repeated repair recommendations—[she] failed to pursue her claims in a timely manner" and property owner's "failure to comprehend the magnitude of the water intrusion and other defective conditions is immaterial.").

While Appellants contend they acted reasonably in not conducting destructive testing in 2012 to determine whether the Property had additional unrepaired termite damage, such does not negate the fact that they were on notice that "some claim against another party might exist." *Gibson v. Bank of Am., N.A.*, 383 S.C. 399, 406, 680 S.E.2d 778, 782 (Ct. App. 2009). The issue here is whether Appellants acted with promptness in pursuing their legal claims, not whether they acted reasonably in repairing the termite damage discovered in 2012, or in discovering additional concealed termite damage. The undisputed evidence in the record shows Appellants either knew or should have known about unrepaired termite damage at the Property on or about April 27, 2012. Appellants informed Respondents of potential claims against them by letter dated May 14, 2012. Nevertheless, Appellants did not file suit until June 18, 2018, almost three years after the statute of limitations expired.

## II.  Equitable Tolling

Appellants further urge this court to set aside the statute of limitations as a matter of equity. "[E]quitable tolling is a doctrine that should be used sparingly and only when the interests of justice compel its use." *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 386 S.C. 108, 117, 687 S.E.2d 29, 33 (2009). "The party claiming the

---

S.C. 172, 183, 708 S.E.2d 787, 793 (Ct. App. 2011), *Santee Portland Cement Co. v. Daniel International Corp.*, 299 S.C. 269, 384 S.E.2d 693 (1989), *overruled on other grounds by Atlas Food Systems & Services, Inc. v. Crane National Vendors Division of Unidynamics Corp.*, 319 S.C. 556, 462 S.E.2d 858 (1995), and *Box v. Sparrow Group, LLC*, Op. No. 2018-UP-353, 2018 WL 3913504 (S.C. Ct. App. Filed Aug. 15, 2018), discussed in Appellants' briefing, are likewise distinguishable.

statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use." *Id.* at 115, 687 S.E.2d at 32. "It has been observed that '[e]quitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.'" *Id.* at 116, 687 S.E.2d at 32 (quoting *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 66 (2004)).

Other than the presence of caulking and the replacement wood found during the 2018 bathroom renovation, Appellants have not shown the existence of any extraordinary circumstance preventing them from filing a lawsuit within three years after discovering the caulking and termite damage in 2012. Mr. Hine knew he had a potential claim in 2012 when he sent not one but two demand letters to Marchant. However, in 2012, Appellants failed to follow through with their threat of legal action against Respondents and are unable to point to any conduct by Respondents preventing their filing after the 2012 discovery of unrepaired termite damage. Instead, Appellants focus on their argument that the McCrorys covered up more extreme termite damage when they flipped the Property and the only way Appellants could have discovered the fraudulent conduct would have been through destructive testing. While the McCrorys' actions were, at best, a band aid employed to fix the underlying termite problem, their arguably deceptive acts are not the type of "extraordinary event" that would justify equitable tolling—particularly as the exercise of reasonable diligence would have revealed the extent of the termite problem as early as 2012.

**Conclusion**

For the foregoing reasons, the circuit court's order granting Respondents' motion for summary judgment is

**AFFIRMED.**

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**